NOAH GILMAN *vs.* INHABITANTS OF DEERFIELD.

In an action against a town for an injury from a defect in a highway, the plaintiff testified that he knew of the defect some weeks before he received the injury, and had driven his horse over it, checking him to a walk because he did not think it safe to pass at a faster gait; that when he sustained the injury he was driving a quick, highspirited horse, accustomed to start quickly as any highspirited horse is; that he approached the defect on descending ground, going at a trot; that the defect was plainly visible for some distance before reaching it; and that as he approached he did not think of it, but his thoughts were engaged with his professional business. *Held*, that this evidence would not warrant a jury to find that the plaintiff was in the exercise of due care.

In an action against a town for an injury received from a defect in a highway, after several physicians have testified that, in their opinion, the plaintiff ought to have kept quiet after receiving the injury, instead of pursuing his professional labors, (as there was evidence that he had,) and that if he had kept quiet the effect of the injury would have been less severe, the plaintiff may prove that he had been advised by a practising physician of good standing, whom he had consulted after receiving the injury, and who had died before the trial, to continue his professional labors to a moderate extent.

ACTION OF TORT for an injury occasioned by a defect in a highway which the defendants were bound to keep in repair.

At the trial in the superior court, before *Lord*, J. the plaintiff, who was a physician, testified that the alleged defect in the highway was a hole or gully at a bridge or culvert extending across the road, about a foot deep on one side of the road and about six inches deep on the other; that this defect had existed some weeks or months, and he knew and passed over it several times within a few weeks before the injury, the last time within a week or a fortnight before, and there was then a defect there so serious that he did not think it safe to drive over it on a trot, but walked his horse over; that it was on the east side of a hill, thirty or forty rods from the top, and there was no obstacle to prevent him from seeing it several rods before he reached it; that his horse was a quick, highspirited animal, accustomed to start quickly as any highspirited horse is; that he had owned the horse about a year, and had never had any difficulty with him but once, when the horse, in turning a corner, went round quickly and sharply and upset the vehicle; that on the occasion of receiving the injury sued for, he approached the defect in the road from the top of the hill, driving his horse along at a fair trot, at the rate of five or six miles an hour; that he did not remember whether he was driving with a slack or a tight rein, though he ordinarily drove with a tight rein; that he was on the way to visit a patient, and his thoughts were on his professional business, and he did not think of the defect in the road, or see it, until it was too late to stop his horse; that the wheels of his buggy immediately went in with a jolt, and when it rose from the gully he saw that the horse was far from the carriage, so that the traces had dropped to the ground and the shafts had dropped out of the thill straps; that he immediately pulled the horse up, and the horse stopped so quick that the plaintiff was much surprised; that the buggy or some part of it came in contact with the horse, whereupon the horse kicked violently, became uncontrollable, and ran away down the hill, and the plaintiff, in trying to get out of the back of the buggy, received an injury to his spine. It did not appear that any other person was present or saw the plaintiff from the time he started from his house until after he fell out of the buggy, and there was

no other evidence of any kind as to the manner in which the plaintiff was driving, or as to the mode or manner of the accident or the facts or circumstances accompanying it, up to the time when the plaintiff was found after he was thrown out of the buggy.

The presiding judge instructed the jury that the burden of proof was on the plaintiff to show that he was using reasonable care at the time when the accident occurred ; that what was reasonable care under the circumstances would depend, not only upon the manner of driving, but upon the character of the horse and the character of the road ; and that the question for them upon this part of the case was whether the testimony of the plaintiff did prove that he was exercising reasonable care.

The plaintiff testified that he resumed his professional labors soon after he received the injury. Several physicians called as witnesses for him testified, on cross-examination, that his injury required rest and abstinence from personal and professional labor after it; and some of them testified that if the plaintiff had rested, as they would have advised if consulted at the time, he might possibly have been entirely well before the trial. The plaintiff was then permitted by the judge, against the defendants' objection and exception, to testify that he was advised by Dr. James Dean, an eminent physician, whom he consulted, since deceased, to continue his professional labors to a moderate extent.

The jury returned a verdict for the plaintiff, which the defendants moved to set aside as against evidence and the weight of evidence, and because the jury found that the plaintiff, at the time of receiving the injury, was in the exercise of due care, when there was no evidence to warrant such finding. The presiding judge reported the case so far as to present for the determination of this court the question whether there was any sufficient evidence upon which the jury might find for the plaintiff, and whether the admission of the evidence excepted to was erroneous.

*S. T. Spaulding*, for the plaintiff, cited *Lund* v. *Tyngsboro*, 11 Cush 563; *Marble* v. *Worcester*, 4 Gray, 395; *Bigelow* v.

*Rutland,* 4 Cush. 247; *Adams* v. *Carlisle,* 21 Pick. 146; *Reed* v. *Northfield,* 13 Pick. 94; *Thompson* v. *Bridgewater,* 7 Pick. 188; 1 Greenl. Ev. §§ 101, 468.

*D. W. Alvord,* for the defendants.

MERRICK, J.   Upon the pleadings in this case, the burden of proof at the trial was upon the plaintiff to show that, at the time of the occurrence of the accident by which he was seriously injured, and for which he seeks to recover compensation, he was himself using due care; and the case is reported by the presiding judge to bring before this court the question whether there was any evidence on the part of the plaintiff tending to establish that fact.   It was rightly held that, upon the motion for a new trial because the verdict was against the evidence and the weight of evidence, his determination was final and conclusive; not subject to exceptions, nor affording any proper occasion for a report of the case.   The sufficiency of the evidence to establish any particular fact essential to the maintenance or defence of an action is strictly within the province of the jury; but whether upon the facts proved there is any evidence tending to establish it is a question of law to be decided by the court.

Whenever a party is required to show that on any particular occasion he was in the exercise of due care, he must produce some evidence to establish the fact.   This may be done in various ways.   It may be shown by positive and direct proof of the fact, or of any collateral facts and circumstances from which it can justly and truly be inferred.   *Adams* v. *Carlisle,* 21 Pick. 146.   But it is not a thing to be presumed as a mere matter of course.   Care imports attention, heedfulness, caution; and to use or take any degree of care there must be some vigilance, some exertion of the faculties to preserve what it is desirable to save, or to avoid the danger or avert the peril to which a person may be exposed.   When there is no thought of what may happen as the consequence of the action or conduct of a party, and no vigilance or circumspection is exercised concerning it, there is no care; none is or can be taken under such circumstances; for care, in its very nature and significa-

tion, imports that to its existence there must be some degree of activity and caution.

The plaintiff was a witness upon the trial, and he relies alone upon the facts stated in the testimony which he gave to show that he was in the exercise of due care when he received the injury of which he complains. In this testimony we think it impossible to find that he took the least possible degree of care to preserve or protect himself from the peril to which he was exposed by the defect in the highway. He admits that he was acquainted with the road; that for several weeks the defect com· plained of had existed; and that it was within his own knowl-edge, as he had on several former occasions passed along there, driving his horse upon a walk, because he did not think it was safe to travel there in a more rapid movement. And he adds that, upon the particular occasion when he sustained the injury set forth in the declaration in his writ, he was riding in his carriage drawn by a quick, highspirited horse, accustomed to start quickly, as any highspirited animal is; that as he approached on descending ground the place of the defect, which was plainly visible for a considerable distance before it was reached by him, he was driving upon a trot; that, in this situation and travelling in this manner, he did not think at all of this defect, but that his mind was wholly absorbed in thought concerning his pro-fessional business. The result of all these statements is inevi-table. His testimony not only wholly fails to show that there was the exercise of that degree of care which men of ordinary prudence use in seasons or on occasions of exposure to harm and injury, but is equivalent to a positive declaration that he was utterly incautious, and took no care of himself what-ever. It is therefore certain that he entirely failed to produce upon the trial any evidence having a tendency to show the existence and truth of a fact, without satisfactory proof of which he was not entitled to a verdict.

A new trial must therefore be granted. If any additional proof can be produced by the plaintiff upon this question, he has a right to submit it to the jury. If he cannot, it is mani· fest that his action cannot be maintained.

His testimony as to what took place between himself and Dr. Dean, and the advice which he received from him, and what he did in pursuance of it, was properly admitted. It bore directly upon the question of the amount of damages which he ought to recover, if upon the facts proved his action could be maintained. It was important to him to show that his subsequent suffering was not the result of inattention or recklessness on his part, but was the probable or necessary consequence of the injury which he had received, and was neither caused nor increased by any imprudent conduct of his own.

*New trial ordered.*