Filed June 21, 1894.

---

No. 831.

## The Chicago, St. Louis and Pittsburgh Railroad Company v. Butler.

RAILROAD. — *Personal Injury.* — *Contributory Negligence.* — *Railroad Crossing.*—Where A, in approaching a railroad crossing, was riding in a wagon as the guest of B, no regular train being then due, they being nearer the railroad track when eighty feet distant from the crossing than they were to the crossing, and from this point eighty feet distant until they reached the crossing, A conversed with B as to the possibility of a train coming at that time, and also used his eyes and ears to detect the approach of a train, but saw and heard none, and told B to watch his horse, and just as they had made the crossing a train approached from the east at the rate of fifty miles an hour, without giving statutory signals as required by law, and negligently or willfully permitting a great quantity of steam to escape when opposite the already frightened horse, causing it to become unmanageable, whereby A was injured in escaping from the wagon in order to avoid imminent danger, the train being visible in its approach from the northeast at all points in the highway between the crossing and ninety feet east of the crossing,—the court can not say, as a matter of law, that A was guilty of negligence contributing to his injury.

VERDICT.—*Sufficiency of Evidence.*—That the evidence is sufficient to support the verdict, see opinion.

INSTRUCTIONS TO JURY.—*Personal Injury.*—*Expenses Incurred.*—*Absence of Evidence as to.*—In an action for personal injuries, claiming, among other things, damages for expenses incurred, it is error to instruct the jury as if there were evidence in the case in support of such claim, when, in fact, there is no evidence showing the amount of expenses incurred.

SAME.—*Erroneous.*—*When Harmless Error.*—*Special Finding.*—If the special finding show that the facts on which the court erroneously instructed them did not exist, the instruction, under such circumstances, was harmless.

Dissenting opinion by Ross, J.

From the Henry Circuit Court.

*J. H. Mellett, C. H. Burchenal* and *J. L. Rupe*, for appellant.

*L. P. Newby* and *M. E. Forkner*, for appellee.

DAVIS, J.—The appellee recovered judgment against appellant in the court below for three thousand dollars on account of personal injuries. With their general verdict the jury returned answers to a large number of interrogatories. The errors complained of are predicated upon the action of the trial court in overruling the demurrer to the complaint, the motion for judgment upon the answers by the jury to the interrogatories, the motion for a new trial, and in rendering judgment in favor of appellee upon the general verdict.

The ruling of the court on the demurrer to the complaint is the first question discussed. The complaint, omitting the formal allegations, charges, in substance, that the appellant's railroad crosses the national road in the village of Raysville, Henry county, at an angle of about thirty degrees, at or near the center of Raysville; that the national road at this point is about eighty feet wide, and Raysville contained a population of about 300; that the highway runs east and west through the town,

and the railroad runs northeasterly and southwesterly; that on the north side of the highway, and east of the crossing, there were a large number of dwelling houses and buildings obstructing the view of the railroad track to the east; that the railroad, east of the crossing, curves to the east, and the view is obstructed by hills, etc.; that two other highways cross the railroad, one on either side of the national road crossing, and 400 feet therefrom; that on the 22d of December, 1888, appellee, with one John E. Keyes, was returning from church, east of Raysville, and, upon invitation of Elijah Applegate, they rode with him from the church, intending to go to Knightstown, where the parties all resided; that they were riding in an ordinary covered spring wagon, with one seat, and drawn by one horse; the plaintiff was seated with the driver, on the same seat, and was facing in the direction in which they were traveling, Keyes being seated between plaintiff and Applegate, facing the rear of wagon; that in this situation they approached the railroad crossing; that when about one hundred feet from the crossing Applegate checked his horse to a slow walk, and he and plaintiff looked and listened, with due care and diligence, for approaching trains, but neither saw nor heard any train approaching, and no trains were then due; that thereupon Applegate drove the horse upon and over the crossing, and just as the wagon passed over the track the appellant's servants negligently, and without giving any signal, ran a through mail train, at the rate of fifty miles an hour, over said crossing, from the east, and as the engine passed the horse, running almost parallel with the course in which he was going, appellant's servants negligently and maliciously opened the side valves of the engine, thereby causing a great vapor of steam and smoke to escape with a loud, hissing and frightening noise, which, combined with the noise of the train,

created a perfect tumult of noise and confusion, "and the plaintiff expressly avers that the defendant did not, nor did any of her servants, agents or employes in charge of said train, or otherwise, sound any whistle or ring any bell within three quarters of a mile of said crossing while approaching thereto, but, on the contrary, he avers that she, by her servants as aforesaid, did, in a most careless and negligent manner, run said train of cars out of time into and through said place where people were constantly passing and repassing at the unusual high rate of speed aforesaid, upon a down grade, without sounding any whistle or ringing any bell within three fourths of a mile of said crossing; that had any signal been given, the plaintiff and said Applegate could and would have heard the same, and the injury could and would have been avoided," and by reason of the negligent and careless acts of the appellant, by its employes aforesaid, the said horse, though perfectly gentle and docile, became greatly frightened and unmanageable, and ran away; that the driver, in attempting to control the horse, broke the bridle bit, and the horse then being beyond control, and running in the direction of a large number of locust shade trees standing upon the side of the street, a short distance ahead of him, the appellee, to avoid a collision with the trees, and the danger therefrom, which seemed to him at the time imminent and unavoidable, attempted to leap from the wagon, and falling upon the ground received bruises and injuries to his shoulder and arms, for which he sues and demands judgment; that the injury resulted wholly from defendant's negligence, and without any fault of plaintiff.

It is insisted by counsel for appellant that the purpose of the pleader was to rely upon the common law action of negligence in causing the escape of the steam, and thereby causing the horse to take fright and run away,

and that the allegations as to the failure by appellant's servants to give the statutory signals, were for the purpose of showing that the appellee was not in fault in bringing him in close proximity to the passing train, and were not stated as the basis of a cause of action under the statute.    On this theory the contention is that the complaint is not sufficient.    We do not concur with the views of counsel for appellant as to the theory of the complaint.    In our opinion, the complaint proceeds upon the theory that the appellant negligently failed to give the statutory signal, by reason of which the appellee, in the exercise of due care, was placed in a position of danger, and that by reason of such negligence and the noise of the train and the escape of steam, as concurrent acts and circumstances, the horse became frightened and the appellee was injured.    On this theory the complaint is sufficient.    *Louisville, etc., R. W. Co.* v. *Davis,* 7 Ind. App. 222.

The second and third assignments of error, that the court erred in overruling appellant's motion for judgment in its favor on the answers of the jury to the interrogatories, and in rendering judgment for appellee, we will consider together.

The interrogatories which were submitted at the request of the appellant, and the answers of the jury thereto, are as follows:

"1. Was plaintiff injured through the negligence of any of defendant's agents or servants?    If so, state specifically what act of negligence, and by whom committed; state all.

"Ans.    Yes; by neglecting to sound proper signals by defendant's agents or servants in charge of train.

"2. State whether or not the whistle was blown upon defendant's train prior to approaching said crossing, and if so, how many times, and where at each time.

"Ans. Yes. The whistle was blown once, at some point beyond Pritchard's crossing.

"3. If plaintiff had heard the signal from defendant's train before he went on the crossing, could he have avoided the injury?

"Ans. Yes; if given as law directs.

"4. If plaintiff had seen defendant's approaching train before going upon the crossing, could he have avoided the injury?

"Ans. No.

"5. How far eastwardly from the crossing where the accident complained of took place would a traveler on the National road have to go before he would meet any obstruction which would prevent his seeing the train approaching from the northeast along defendant's track?

"Ans. Ninety feet.

"6. How far up the track toward the northeast could he see an approaching train before he came to those obstructions? Could he not see more than half a mile?

"Ans. 1st. About a third of a mile. 2d. No.

"7. From a point in the middle of the National road, 108 feet east from the center of the crossing, could not a train coming from the northeast along defendant's road be seen at all points within 3,100 feet of the crossing, at the time of the accident complained of?

"Ans. No.

"8. Could not such train be so seen from all places in the National road between the crossing and this point 108 feet distant therefrom?

"Ans. No.

"9. From a point in the middle of the National road, 80 feet east from the crossing, could not a train coming from the northeast along defendant's road, be seen at 3,100 feet of the crossing, at the time of the accident?

"Ans. No.

"10. Could not such train be seen from all points on the National road, between the crossing and this place, 80 feet distant therefrom?

"Ans. Yes.

"12. Was the plaintiff acquainted with the character of the crossing at which the accident occurred, and the approaches thereto?

"Ans. Yes.

"13. Did plaintiff believe said crossing to be a dangerous one?

"Ans. Yes.

"14. At what hour of day or night did the accident occur?

"Ans. Two o'clock P. M.

"15. At what rate of speed did plaintiff approach the crossing from a point 100 feet east of it?

"Ans. Part of the time in a walk and part of the time in a slow trot.

"16. At what rate of speed did defendant's train approach the crossing?

"Ans. Fifty miles per hour.

"17. What did the plaintiff do to avoid the accident and injury resulting from it? State all that he did, and where each thing was done.

"Ans. 1st. He engaged in conversation with those in the wagon as to the possibility of a train being due when at Brando road. 2d. He used his eyes and ears from this point to the crossing, then, at the crossing, he told Applegate to watch his horse.

"18. Did plaintiff, at any time, when approaching the crossing, request the driver of the wagon in which he was riding to stop; if so, when?

"Ans. No.

"19. In approaching the crossing, was not the steam shut off from the cylinder of defendant's engine?

"Ans. No.

"20. Could steam escape from the cylinder of defendant's engine, so as to make a loud and hissing noise, when the steam was shut off from such cylinder?

"Ans. No.

"21. Was defendant's track at the crossing a single or double track?

"Ans. A single track.

"22. If plaintiff had seen defendant's approaching train while he was approaching the crossing, and was 100 feet distant therefrom, could he have avoided the accident?

"Ans. Yes.

"23. If plaintiff had seen defendant's approaching train while he was approaching the crossing, and was still 80 feet distant therefrom, could he have avoided the injury?

"Ans. No.

"24. If plaintiff had seen defendant's approaching train while he was still 50 feet from the crossing, could he have avoided the injury?

"Ans. No.

"25. If plaintiff had seen defendant's approaching train while still 30 feet distant therefrom, could he have avoided the injury?

"Ans. No.

"26. Was not plaintiff, at the time of the accident, in full possession of his senses and faculties unimpaired? If not, state in what respect.

"Ans. Yes.

"27. Was not the day of the accident a clear, mild winter day? If not, what kind of a day was it?

"Ans. It was a mild winter day.

"28. While plaintiff was approaching the crossing, and before the horse attached to the vehicle in which he rode went upon the crossing, how many feet distant from the crossing was he when he last looked toward the northeast along defendant's track for an approaching train?

"Ans. Eight or ten feet.

"29. From a point in the middle of the National road, 80 feet east from the center of the crossing, could not a train coming from the northeast along defendant's track be seen at all places within half a mile of the crossing, at the time of the accident? And could not such train be seen from all places in the National road between the crossing and this place 80 feet distant therefrom?

"Ans. 1st. No. 2d. Yes.

"30. State whether or not a train approaching from the east could be seen by a person upon said highway 255 feet east of the crossing of the said highway and said railroad? And if so, for what distance east of said crossing upon said track said train could be seen?

"Ans. 1st. Yes. 2d. About 1,700 feet."

The position of counsel of appellant is that the answers of the jury to the interrogatories conclusively show that appellee was guilty of negligence in approaching the crossing which contributed as a proximate cause to the injury. In this connection it is urged that many of the findings are statements of conclusions drawn by the jury.

It is conceded that such answers are responsive to the questions, and if the answers are statements of conclusions, such conclusions have been elicited at the instance of the appellant. Disregarding, however, all the statements that can be construed as conclusions, it should be remembered that answers to the interrogatories override the general verdict only when both can not stand to-

The Chicago, St. Louis and Pittsburgh Railroad Co. v. Butler.

gether, that is to say, when the antagonism is such, upon the face of the record, as is beyond the possibility of being removed by any evidence legitimately admissible under the issues in the cause. *Lockwood* v. *Rose*, 125 Ind. 588 (594).

The contention of counsel for appellant is that the answers to the interrogatories show that the appellee, in approaching the crossing and in passing over the entire distance of eighty feet before going upon the crossing, had a clear and unobstructed view of the track in the direction from which the train was coming for a third of a mile, and, therefore, they insist that the conclusion is irresistible that he was chargeable, as a matter of law, with contributory negligence. The general verdict, as we have seen, finds every material fact, in issue, necessary to a recovery in behalf of appellee, in his favor. The effect of this verdict is that the negligence of appellant has been established, and also that the injury was occasioned without fault on the part of appellee. This verdict is to stand unless the answers to the interrogatories are so in conflict with it that it can not be sustained by any possible evidence that was legitimately admissible in the case under the issues. The appellee was riding in the wagon as the guest of Applegate. No train was then due. The train was being run out of time at a speed of fifty miles an hour without giving any of the signals for the crossing as required by the statute. When eighty feet east of the crossing, appellee was nearer to the railroad track north of that point than he was to the crossing. During the time they were approaching the crossing from this point, appellee engaged in conversation with those in the wagon as to the possibility of a train coming at that time, also used his eyes and ears, and told Applegate to watch his horse. In the exercise of due care, appellee was required to look and listen in

both directions for approaching trains, but he could not look both ways at the same instant. He was not required to give his sole attention in one direction. The position of appellee and the location of the train at the time when, in the exercise of due care, appellee should have first seen the approaching train does not appear. If the train was seen by appellee when he was within less than eighty feet from the crossing the course to be pursued had to be determined instantly. With the train coming behind and to the right of them, the question was whether they should stop on the east side of the track or cross the track in front of the train to the west side, or attempt to get out of the way in some other direction. It appears that the parties, including appellee, did cross the track before the train reached the highway crossing.

Now, in what respect can the court adjudge as a matter of law, under the rule applicable in such cases as hereinbefore enunciated, on the answers of the jury to the interrogatories, that appellee was on this occasion guilty of negligence which contributed as a proximate cause to the injuries he sustained. What, in the exercise of ordinary care, can the court say he should have done that he did not do, or that he should not have done that he did do? We do not know that he would have been in any better or safer position, or that the horse would not have been frightened and the injuries sustained, if the horse had been stopped or an attempt had been made to avoid the danger in some other manner. The principles applicable to this case are fully and clearly stated in a recent decision of the Supreme Court. *Pittsburgh, etc., R. W. Co.* v. *Burton,* 37 N. E. Rep. 150.

The reasoning of Judge HACKNEY in that opinion is decisive of the question now under consideration. See, also, *Terre Haute, etc., R. R. Co.* v. *Brunker,* 128 Ind. 542.

It is next insisted that the evidence is insufficient to

The Chicago, St. Louis and Pittsburgh Railroad Co. *v.* Butler.

sustain the verdict. If it were conceded to be true, as contended by counsel for appellant, that appellee, in the exercise of ordinary care, ought to have seen the approaching train when he was within fifty feet of the crossing, does the conclusion inevitably follow that he was guilty of contributory negligence in crossing the railroad track? The appellee had the right to use the highway crossing. He also had the right to presume that appellant's servants in charge of any approaching train would give the statutory signals before reaching the crossing. If, in the exercise of prudence and caution in proportion to the peculiar hazards incident to this crossing, he did not discover the train until he was in a perilous position we are not prepared to say that without time for reflection he ought to have adopted some other course in his efforts to get out of danger. There is evidence, in our opinion, fairly tending to support the verdict on every material point in issue.

It is also insisted that the third instruction given by the court is erroneous. The substance of this instruction is that if appellant's employes sounded the whistle and rang the bell, as required by law, yet if the engineer unnecessarily opened the side valves of the engine when it was likely to frighten the animal, etc., the appellant would be liable. This instruction does not correctly state the law applicable to the case.

It is conceded, however, by counsel for appellant, that the answers to the interrogatories conclusively show that the only acts of negligence on which the verdict is based is the failure to sound the proper signals. In this view of the case the instruction was harmless.

In other words, the jury expressly find that the facts, on which the court erroneously instructed them they might find appellant liable, did not exist.

Counsel for appellant also earnestly contend that the court erred in giving the jury the eleventh instruction.

It is alleged in the complaint, "that by reason of said injury his ability to practice his profession or follow any other pursuit in life has been greatly impaired, his shoulder has been permanently injured, he has suffered great pain of body and mind, has expended one hundred dollars in attempting to cure himself, has lost a large amount of time, and has been otherwise damaged," etc.

The eleventh instruction is as follows:  "If you find for the plaintiff, you will assess to him such damages as you in your judgment determine will compensate him for the injury sustained.  And, in determining the amount of same, you will consider the nature and character of the injuries received by him, if any; any pain and suffering he may have endured in consequence thereof, either in body or mind; whether his injury is permanent or otherwise; loss of time occasioned thereby; expenses of curing, or attempting to cure, himself; any inability to labor or engage in his usual avocation; and all facts and circumstances in evidence tending to show the injury he has sustained, and upon the whole case award him such just sum in damages as will fully compensate him for the injury received, if any."

It is not claimed that the instruction is not a correct statement of the law as a general rule.  The only objection urged to the instruction is based on the proposition that there is no evidence in the record tending to show that appellee had incurred any expenses in curing, or attempting to cure, himself, or the value of any time lost by him.  The position of counsel is that there is no evidence which would enable the jury to fix any damages for loss of time or for expenses.

There is evidence in the record showing that appellee sent for one physician, who examined him twice on dif-

ferent occasions, and also gave him some treatment for his injuries; also, that he called once on another physician, who examined his injuries.

It also appears that appellee was an attorney at law, engaged in the practice of his profession; that his shoulder was seriously injured, and that he was severely bruised on his side; that he was confined to his house for four days; that his shoulder continues stiff and that he is unable to use it; that he can only write a few minutes at a time, and that his arm then becomes numb and useless, and that the disability interferes with the practice of his profession.

It is true there is no direct evidence as to the value of the time lost by appellee, occasioned by the injury. It would undoubtedly have been competent for appellee to have proved, if properly alleged, the value of his time during the period he was disabled by the injury. *Carthage Turnpike Co.* v. *Andrews,* 102 Ind. 138.

The value of the time lost is not referred to in the instruction. The jury are told that in determining the amount of damages they will take into consideration the fact whether loss of time was occasioned thereby, but they were not instructed that they should allow anything for the value of such lost time. It was proper for the jury to consider the nature and extent of appellee's injury, his mental and physical suffering and the impairment of his ability to follow his usual vocation, although there was no direct proof as to the amount of such damages. In these respects the instruction properly enunciates the elements which the jury might consider in estimating the damages. *City of Indianapolis* v. *Scott,* 72 Ind. 196; *Indiana Car Co.* v. *Parker,* 100 Ind. 181; *Louisville, etc., R. W. Co.* v. *Falvey,* 104 Ind. 409.

It occurs to us that under the circumstances of this

case, as disclosed by the evidence, the fact as to whether his injuries were such as to cause him to lose time by being confined to his house for four days was an element proper for the jury to consider. When the instruction is considered in the light of the issues and the evidence the jury, in our opinion, could not have been misled by the charge into the supposition that they should allow anything in the nature of special damages for the value of the four days he was confined to the house.

The other question is more difficult. It is expressly alleged in the complaint that appellee "has-expended one hundred dollars in attempting to cure himself." The jury were instructed that in determining his damages they should take into consideration the "expenses of curing, or attempting to cure, himself." No effort was made, on the trial, to prove the amount of such expenses, except such inferences as might be drawn from the services shown to have been rendered by the physicians.

In the case of *Duke* v. *Missouri Pacific R. R. Co.*, 41 Am. and Eng. R. R. Cas., p. 221, the Supreme Court of Missouri, speaking upon the precise question here involved, say: "There was an entire failure of proof as to the allegation in the petition that the plaintiff expended a large sum of money for professional services of physicians and nurses, and for drugs, under the most liberal construction that can be placed upon it; and it was error in the court to instruct the jury as if there was evidence in the case in support of that averment. Instructions must be confined to the case made by the evidence within the issues, 'defined by the pleadings.'" 2 Thompson Trials, p. 2309; *White* v. *Chaney*, 20 Mo. App. 389; *Waddington* v. *Hulett*, 92 Mo. 258; *Lester* v. *Kansas City, etc., R. R. Co.*, 60 Mo. 265.

Where there is no evidence showing the amount or the approximate amount of expenses incurred for medicines,

medical attention, or like services, the jury have no basis upon which to form an estimate of the damages that ought to be assessed on account thereof, and damages of this kind can not be found except upon such proof. *Reed* v. *Chicago, etc., R. Co.,* 57 Iowa, 23; *Eckerd* v. *Chicago, etc., R. W. Co.,* 70 Iowa, 353; *Crowley* v. *St. Louis, etc., R. W. Co.,* 24 Mo. App. 119; 2 Shear. and Redf. Neg. (4th ed.) 759.

Where compensatory damages are given, the recovery must be confined to the actual damages sustained. *Hannibal Bridge Co.* v. *Schaubacher,* 57 Mo. 582. When such damages are susceptible of proof, with approximate accuracy, and may be measured with some degree of certainty, they should not be left to the guess of the jury, even in actions *ex delicto. Parsons* v. *Missouri, etc., R. W. Co.,* 94 Mo. 286; *Pritchard* v. *Hewitt,* 91 Mo. 547; Thomp. Trials, *supra,* par. 2077. When so left, it is impossible to tell to what extent a verdict may have been affected by the vague estimates the jury may have placed upon the values concerning which there was no proof; consequently it is impossible to say that the jury was not prejudiced by this erroneous instruction upon the question of damages, and for such error the case must be reversed, and remanded for new trial.

In *Reed* v. *Chicago, etc., R. Co.,* 12 Am. and Eng. R. R. Cases, 107 (37 Iowa, 23), the question presented was directly raised. The Supreme Court of Iowa says: "Under the instruction in question the jury were directed to include compensation for medical services in their verdict. They doubtless would feel authorized to determine the amount to be allowed therefor, according to their own judgment, without aid of evidence. But the law can not be administered in this uncertain way. Damages of this kind can not be found by the jury except upon proof. It will not do to say that the amount of

damages allowed by the jury may have been small. We can know nothing about the amount, and if we could know it to be insignificant, we could not relieve this case from the operation of the familiar rules of law which require damages of the character of those under consideration to be established by proof." To the same effect is the case of Eckerd v. Chicago, etc., R. W. Co., 27 Am. and Eng. R. R. Cases, 114 (70 Iowa, 353).

These authorities seem to sustain the position of counsel for appellant that where there is no evidence showing the amount of the expenses incurred, it is error to instruct the jury as if there were evidence in the case in support of that averment.

The identical question here presented, so far as we are advised, has never been decided by either the Supreme or Appellate Court of this State. This item of expenses is in the nature of special damages. The amount claimed on account of such expenses is one hundred dollars. It is not to be presumed in any event that the jury awarded on this item more than the amount claimed. With some hesitation we are constrained to hold that the giving of this part of the instruction was, under the circumstances, erroneous. If the appellee within sixty days remits one hundred dollars of the judgment as of the date of its rendition, the judgment will stand affirmed at cost of appellee in this court, otherwise it will be reversed with instruction to grant a new trial. The other instructions given by the court fully cover the case, and when construed together as an entirety fairly state the law. As to the instructions asked and refused, so far as they state the law, they were embraced in the instructions given. We have not, except as above stated, found any reversible error in the record.

Judgment affirmed, on condition that a remittitur is filed as above indicated.

Filed June 19, 1894.

## DISSENTING OPINION.

Ross, J.—The first question argued by counsel relates to the sufficiency of the complaint.  There seems to be some difference in the opinion of the respective counsel as to the theory of the complaint, the appellant's counsel insisting that the *gravamen* is the charge that the appellant's servants while running a passenger train along and upon appellant's railroad, and in passing over and across the highway upon which the appellee was traveling "negligently, carelessly, and maliciously opened the side valves of the engine, thereby causing a great vapor of steam and smoke to escape with a loud, hissing and frightening noise, which, combined with the noise of the running train, created a perfect tumult of noise and confusion, frightening said horse so that it became unmanageable and ran away," etc.  On the other hand counsel for appellee say:  "The gist of the cause of action is the negligence of the defendant in not giving the proper statutory signals, whereby the plaintiff was placed in such proximity to the passing train that the horse was frightened and became unmanageable by the noise and tumult, occasioned by the passing of the train and the escaping steam from the side-valves of the engine, which could and would have been avoided, had the proper signals been given."

It is well settled that every pleading must proceed upon some single, definite theory, and must be good upon that theory or not at all.  *Pennsylvania Co.* v. *Clark*, 2 Ind. App. 146; *Thompson* v. *State, ex rel.*, 3 Ind. App. 371; *First Nat'l Bank, etc.*, v. *Root*, 107 Ind. 224; and the theory of a pleading is to be determined from its general scope and tenor, and not by isolated or fragmentary statements.  *Chicago, etc., R. R. Co.* v. *Bills*, 104 Ind. 13; *Peters* v. *Guthrie*, 119 Ind.

44; *Pearson* v. *Pearson*, 125 Ind. 341; *Miller* v. *Burket*, 132 Ind. 69; *Monnett* v. *Turpie*, 132 Ind. 482; *City of Fort Wayne* v. *Hamilton*, 132 Ind, 487.

But if a complaint states a good cause of action, whether upon the theory intended by the pleader or upon some other theory, a demurrer thereto for want of facts should be overruled. The theory of a pleading is determined not from what the pleader intended, but from the facts pleaded. The prevailing theory is that upon which the pleading states a cause of action, and upon that theory is its sufficiency determined. For this reason it is never error to overrule a demurrer to a complaint if it states a cause of action upon any theory.

And it is equally well settled, that a general averment must yield to a specific one. *Morgan* v. *Lake Shore etc., R. W. Co.*, 130 Ind. 101; *Racer* v. *State, for Use*, 131 Ind. 393. But general allegations are controlled by specific allegations only when the latter are repugnant to the former. But when the latter are merely explanatory of, or are included in the former, they do not control. *Warbritton* v. *Demorett*, 129 Ind.346.

When a pleading containing a general averment contains specific averments which attempt to define the component parts of the general averment, the specific averments control, and the sufficiency of the pleading is determined by the specific averments alone. *Ivens* v. *Cincinnati, etc., R. W. Co.*, 103 Ind. 27; *Louisville, etc., R. W. Co.* v. *Schmidt*, 106 Ind. 73; *Ross* v. *Donaldson, Sheriff*, 123 Ind. 238.

In the complaint under consideration, the pleader has specifically averred that the servants and employes of appellant "negligently, carelessly, and maliciously opened the side valves of the engine, thereby causing a great vapor of steam and smoke to escape with a loud, hissing and frightening noise, which, combined with

the noise of the running train, created a perfect tumult of noise and confusion. That by reason thereof, and by reason of the negligent and careless acts of the defendant and her employes aforesaid, the said horse, though perfectly gentle and docile, became greatly frightened and unmanageable and ran away.'' By these specific allegations (and they must be considered as definitive of the negligence complained of), the acts of the appellant, which caused the horse to become frightened and unmanageable and to run away, are clearly and positively defined, and for the purpose of emphasizing these acts as the cause of his injury, the appellee alleges that the horse, though perfectly gentle and docile, by reason of these acts of appellant's servants became greatly frightened and unmanageable and ran away.

It seems to have been the desire of the pleader to so state his cause of action that the court might not, by any possibility, mistake its theory, and for fear that the court might conclude that he was attempting to charge the appellant with negligence in failing to give the statutory signals, upon which theory it would have been necessary for him to negative contributory negligence on his part, which would naturally arise against him from the fact that he went upon and crossed the railroad track when the train was approaching in close proximity, alleges that the horse was perfectly gentle and docile. The natural conclusion deducible from the facts alleged is that the horse, being perfectly gentle and docile, was not afraid of a passing train causing simply the ordinary and usual noise incident to its operation, but that this train, when it got opposite to where he was, made an unusual noise, which frightened the horse, causing it to become unmanageable.

The complaint in question contains several allegations of negligence on the part of appellant, as follows:

First. In running its train at the rate of fifty miles per hour.

Second. In failing to give any signal of its approach.

Third. In opening the side valves of the engine, thereby causing the steam to escape.

If a cause of action exists at all in favor of the appellee, it arose by reason of the acts charged which caused the horse to become unmanageable and to run away.

Can it be said that the pleader intended to charge that the horse was frightened at the train because it was running fifty miles an hour rather than thirty, or because no signals were given?

To so construe these allegations in the pleading, the court must, as a matter of law, declare it was the speed of the train, and not the train itself, that frightened the horse, or concerning the giving of signals, that the more noise a train makes the less the liability to frighten animals passing along highways in the vicinity of the railroad upon which trains are being operated. The simplest reasoning leads the writer to believe the converse to be true. I concede, as counsel for appellee argue, that had the employes of the appellant given signals of the approach of the train, the appellee might have heard them, but so far as the allegations of this complaint are concerned, there is nothing to indicate that the failure to give the signals caused the horse to become frightened and run away, while it is specifically averred that by the negligent acts of appellant's servants in opening the side valves, a great vapor of steam and smoke was caused to escape, creating a loud hissing noise, which, combined with the noise of the running train, created a perfect tumult of noise and confusion, greatly frightening the horse, which was gentle and docile, and it became unmanageable and ran away. This is the theory upon which to determine the sufficiency of the complaint.

The Chicago, St. Louis and Pittsburgh Railroad Co. *v.* Butler.

The allegations concerning the failure of appellants to blow the whistle and ring the bell, are mere innuendoes, add no force to, and are not connected with, the acts charged as negligence causing the accident which resulted in the injury complained of. It is not alleged in the complaint either that the appellee, on account of appellant's failure to give the statutory signals, was induced to approach nearer the track than he otherwise would have done, or that his injury was the result of such neglect. In fact, there is no connection between the allegation that appellant's servants failed to give the signals and the allegations setting forth appellee's injury and the manner in which it was received. On the contrary, it is alleged to have been the result of other causes.

It has been so well settled for forty years in this State that I need hardly cite authorities in support of it, that the negligence charged must be shown by the allegations of the complaint to have been the proximate cause of the injury, and that it can not be presumed by the court, in passing upon the sufficiency of the complaint. I call attention to *Reid* v. *Evansville, etc., R. R. Co.*, 10 Ind. App. 385.

The question as to whether or not any act of the appellant, charged in the complaint as negligence, caused the accident which resulted in appellee's injury, is to be determined from the allegations of the complaint, and the presence or absence in the pleading of mere innuendoes or epithets neither adds to nor takes from the force of the material allegations of fact upon which the negligence is predicated. They are mere surplusage, and might have been stricken out on motion.

As already stated, the complaint, viewed as proceeding upon the theory that the plaintiff was injured by reason

of the failure to give the statutory signals, is insufficient. Is it sufficient upon the other theory?

It is insisted by appellant, and I think correctly, that the complaint is defective in not alleging knowledge on the part of the appellants' servants, in charge of the train, of the dangerous position of appellee at the time the valves were opened and the steam permitted to escape. The appellee's counsel apparently concede that the complaint is defective in this respect if that is the theory upon which it proceeds. The majority opinion, however, as I understand it, attempts to construe the complaint by combining all the allegations of negligence, and, in substance, by holding that if the appellant was guilty of negligence in failing to give the statutory signals, and appellee's horse was frightened, not because of appellant's failure to give the signals but on account of its negligence in opening the side valves and permitting the steam to escape, a cause of action is stated.

In such a construction of the complaint I can not concur, for the reason that I think a single paragraph of complaint must proceed upon a single, definite theory. In other words that but one cause of action should be stated in a single paragraph.

To permit general pleading would be to obliterate all rules of definiteness and precision, and bring about great uncertainty and confusion. The statute, section 341, R. S. 1894, requires the plaintiff to state his cause of action "in plain and concise language, without repetition, and in such manner as to enable a person of common understanding to know what is intended." This means that the *gravamen* of the action should be so plainly and concisely stated that a person of common understanding can not mistake it. It is plain, therefore, that when the attorneys representing the different sides and the courts can

not agree as to its theory, the cause of action is not stated in the manner required by the statute.

The object of pleading is to present an issuable fact for trial, and this object can be accomplished only by stating such fact or facts in plain concise language.

As said by ELLIOTT, C. J., in *Western Union Tel. Co.* v. *Reed*, 96 Ind. 195 (198). "If ambiguous pleadings are tolerated, no issue can be framed which will present in an intelligible form questions for trial, and perplexity and confusion will necessarily result. It is no great hardship to require obedience to rules of pleading and logic, and not to do so will result in the evil of leaving disputants without a direct issue, and the courts without the means of determining the competency or relevancy of evidence."

To permit this uncertainty is to permit the pleader to so frame his pleading that he may shift his position at any time to meet the exigencies of his case. The complaint under consideration is subject to the above objection.

It is next urged that the court erred in overruling appellant's motion for judgment in its favor on the answers of the jury to interrogatories.

The rule is firmly settled that special findings of fact override the general verdict only when so inconsistent that both can not stand, and while the court can not sustain a general verdict which can not be reasonably reconciled with the facts specially found, the court does indulge every reasonable presumption in favor of the correctness of the general verdict, and it must stand unless some fact or facts specially found, which are material under the issues, are so inconsistent with it that both can not stand. *Evansville, etc., R. R. Co.* v. *Weikle*, 6 Ind. App. 340, and cases cited.

The interrogatories with answers thereto are set out in the original opinion and need not be repeated.

From them, succinctly stated, the facts specially found are, that the accident occurred at 2 o'clock in the afternoon of a mild winter day; that the appellee was, at the time, in full possession of his senses, and his faculties unimpaired; that he was familiar with the crossing and its approaches, and believed it to be a dangerous one; that in approaching the crossing he and his companions discussed the possibility of an approaching train, and when the horse attached to the vehicle in which he was riding was eight or ten feet from the railroad track he looked toward the northeast, the direction from which the train was approaching.

It is also found that at a point on the highway 255 feet distant from the railroad appellee could have seen the train approaching for a distance of 1,700 feet, and that at any point within 90 feet of the track, if he had looked, he could have seen the train approaching.

Appellant's counsel insist that these facts show contributory negligence on appellee's part contributing to the injury.

Inasmuch as every reasonable presumption is indulged in favor of the general verdict, and as there is no finding that the appellant's servants gave the statutory signals, it must be presumed that the jury found that such signals were not given. But the failure of the railroad company to do what the statute directs does not excuse one who approaches a railroad crossing from exercising the care and taking the precautions which the law enjoins upon him. *Mann* v. *Belt R. R., etc., Co.*, 128 Ind. 138; *Cadwallader* v. *Louisville, etc., R. W. Co.*, 128 Ind. 518; *Thornton* v. *Cleveland, etc., R. W. Co.*, 131 Ind. 492.

In many well considered cases it has been held that if the view of the track is unobstructed to a traveler ap-

proaching the crossing along a highway, he must look and see that no trains are approaching before attempting to go upon the track. And if he proceeds and is injured, the law will presume either that he did not look, or, having looked, did not heed what he saw. *Indiana, etc., R. W. Co.* v. *Hammock*, 113 Ind. 1; *Cones, Admr.*, v. *Cincinnati, etc., R. W. Co.*, 114 Ind. 328; *Ohio, etc., R. W. Co.* v. *Hill, Admx.*, 117 Ind. 56.

"A person is bound to use the senses, and exercise the reasoning faculties with which nature has endowed him. If he fails to so do, and is injured in consequence, neither he, in life, nor his representatives after his death, can recover for resulting injuries." *Stewart, Admx.*, v. *Pennsylvania Co.*, 130 Ind. 242.

The law imposes upon him the duty of using his senses and exercising his reasoning faculties at a time and place when and where their use will avail and enable him to avoid injury.

The common law is based upon common experience, hence the courts judicially know that a traveler approaching a railroad track driving a "gentle and docile" horse, if he is approaching in the manner that an ordinarily prudent person should approach such a dangerous place, with an unobstructed view along the track for 90 feet before he reaches the crossing, can, by the use of his senses and the exercise of his reasoning faculties, see an approaching train and avoid being injured. If he does not see the approaching train the law at once says it was his own fault and he can not recover. And he will not be permitted to say that he looked and listened but did not see the train, because to so state would be to say that he could not see that which was in plain view. When it is shown that the view was unobstructed for a sufficient distance from the track to enable the traveler to see, if approaching cautiously and carefully, the law declares

it is negligence if he fails to see and then stop and thus avoid being injured.

It follows, therefore, that neither the court nor jury can presume, as matter of course, that the complaining party was free from fault, but must, on the contrary, presume that his own negligence brought about the injury, unless there is some evidence to show that he used due care.

"Care imports attention, heedfulness, caution; and to use or take any degree of care there must be some vigilance, some exertion of the faculties to preserve what it is desirable to save, or to avoid the danger or avert the peril to which a person may be exposed." *Gilman* v. *Inhabitants of Deerfield*, 81 Mass. 577.

The jury by their answer to interrogatory number five, find that for ninety feet before appellee reached the crossing his view was unobstructed, and in answer to interrogatory number six, find that he could have seen a train approaching one-third of a mile.

These facts show either that he did not look, or if he looked, did not heed what was in plain view. The giving of the signals by the employes of appellant, would not have given appellee the definite information as to the location and approach of the train that he could have acquired had he looked. In fact if he had looked, he could have seen the train while it was still beyond where the law requires the signals to be given.

With these facts before the court, it was its duty to have rendered judgment in favor of appellant, notwithstanding the general verdict.

This rule is well settled by many decisions in cases which have been before the Supreme Court of this State.

In the case of the *Toledo, etc., R. W. Co.* v. *Goddard*, 25 Ind. 185, it was held that although the view was obstructed until within a few feet of the track, the person

driving the team was guilty of contributory negligence in not ascertaining whether or not a train was approaching, and a recovery was barred.

In the case of *Bellefontaine R. W. Co.* v. *Hunter, Admr.*, 33 Ind. 335, the deceased could have seen a train when he was thirty feet from the track, and the court held that the fact that he could have seen a train when that far away, and yet proceeded, and was injured, conclusively showed contributory negligence.

The case of the *Cincinnati, etc., R. R. Co.* v. *Butler*, 103 Ind. 31, is much stronger than this case. There the view at a point forty or forty-five feet from the track was unobstructed, but when but a few feet distant the view was obstructed by a box-car standing on a side-track, and a train approaching could not be seen until after this obstruction was passed. The appellee testified that as soon as he got past the obstruction he looked and saw the train approaching. That his horse was just then entering upon the main track; he struck his horse and attempted to get across but failed. Another witness testified that the appellee tried to get off the track, pulled on the left line, and did his best to avoid being injured. The court there lays down the rule that the appellee would not be exonerated from the presumption of contributory negligence "if it appears that by the exercise of any degree of diligence, which was, under the circumstances, reasonably practicable and available, he might have avoided the injury."

The case of *Indiana, etc., R. W. Co.* v. *Hammock, supra*, is exactly like the case under consideration, and the court adjudged appellee guilty of contributory negligence in that case. After stating the facts concerning the injury, the court says: "For a distance of seven rods the view of the road to the east was obstructed by a farmhouse and farm buildings. For the last three

rods before going upon the track, the railway track was visible to a person looking to the east for a distance of eight rods at least.

"The plaintiff testified that he looked to the east, but that, when he looked, the approaching train was so near upon the wagon that he saw no means of escape. The conclusion is, therefore, irresistible that the plaintiff neglected to look to the east until the team and wagon had substantially reached the railroad track.

"It is, therefore, certain that if the plaintiff had looked to the east when he reached a point fifty feet from the track, he would have seen the approaching train in time to have avoided the accident."

In the case of *Mann* v. *Belt R. R. and Stock Yard Co.*, *supra*, the facts as to the location of the railroad, its intersection by the highway, and the opportunity for seeing an approaching train, are very similar to the case in hand, and the Supreme Court, in passing upon the sufficiency of the evidence to sustain a verdict for the appellant, says: "In this case the appellant, when two hundred and fifty, or two hundred and seventy-five feet from the railroad, looked along the same eastward, when he could see a distance of about one-fourth of a mile, and saw no approaching train. He did not look again, but drove upon the track where the collision occurred.

"Had he looked when within one hundred feet of the railroad he would have had an unobstructed view of nearly one-half mile. He was familiar with the crossing, and it must be presumed he knew this fact. When it is said that a person approaching a railroad crossing must look and listen attentively for approaching trains, it is not to be understood that he may look from a given point, and then close his eyes; but it is to be understood that he must exercise such care as a reasonably prudent person,

in the presence of such a danger, would exercise to avoid injury.

"The courts can not close their eyes to matters of general notoriety, and to matters of every day observation.

"We must know that a train of cars passing over iron or steel rails, at a speed of thirty miles an hour does not do so without noise. We must know, too, that where a person possessing good eyesight, located within one hundred feet of the track, has an unobstructed view of such track for a distance of near one-half mile, he can not fail to see an approaching train before it reaches him, if he looks attentively, and that if he is possessed of ordinary hearing, he could not fail to hear it when listening attentively, if running at the speed of thirty miles an hour."

In the case of *Cincinnati, etc., R. W. Co.* v. *Howard,* 124 Ind. 280 (288), the following quotation from *Allen* v. *Main, etc., R. R. Co.,* 19 Atl. Rep. (Me.) 105, is cited with approval, viz: "The evidence shows that, at twenty-five or thirty feet from the crossing, the approaching train from Bath might have been seen by the plaintiff several hundred feet distant from the crossing. The plaintiff did not look in that direction until his horse's forefeet were between the rails. Was the neglect on his part to look in that direction a want of ordinary care and prudence? Is a traveler justified in driving upon a railroad crossing, in the absence of safety signals giving him the the right to cross, without looking for an approaching train? It has been many times decided in this court that the traveler, before crossing a railroad, must both look and listen. If the crossing at which the plaintiff was injured is so constructed that an approaching train can not be seen until a traveler comes very near to the railroad track, common prudence requires

him to approach at such speed that when an approaching train may be seen, he may be able to stop, and allow such train to pass.''

''A railroad track is a perpetual menace of danger, and the traveler is not excused if his eyes and ears are not kept open up to such distance of it that he may stop if he can see or hear its approach.   If he had looked at any time within the forty feet before he drove his horse upon the track, we think he must inevitably have seen the train, and could have saved a collision.''   *Freeman* v. *Duluth, etc., R. W. Co.,* 74·Mich. 86.

The above cases announce the duty imposed upon the traveler to avoid coming in collision with the train, and the same duty is imposed upon him to avoid placing himself in such close proximity to the track that either his person or his property may be endangered by a passing train from any cause.

In this case, the jury found that for a distance of ninety feet the view was unobstructed, and a train approaching could be seen for a third of a mile.

If the appellee had looked when that distance from the track, he could not have avoided seeing the approaching train.   It was in plain sight, and if not seen, it was because he did not look.   When, for a distance of ninety feet from the track, the view along the track for one-third of a mile is unobstructed, the law will declare it negligence in a traveler to approach the track in front of an approaching train.   Under such circumstances, it is for the court, as a matter of law, and not for a jury as a question of fact, to declare whether it is negligence for the traveler to proceed.   And the courts universally declare it is negligence.

The majority of the court consider that the jury were the exclusive judges as to whether or not the appellee could have stopped and avoided the injury had he seen

the train approaching, and that their decision on that question can not, in this case at least, be reviewed. In this view of the jury's right, I can not concur. That he could have stopped if he was approaching the crossing as an ordinarily prudent person should, is evident, although a jury might conclude to the contrary, and that by stopping he would have been out of harm's way, in that he could not have been struck by the train. The only question, therefore, is, could a jury, from any evidence which might properly be introduced, decide whether or not appellee's horse would or would not become frightened at the passing train and escaping steam and become unmanageable and run away and injure appellee? Such findings are mere matters of opinion, and not facts. They are not even an opinion based upon given facts, but are based upon supposition only. For a jury to say that if the appellee had seen the train approaching when he was yet eighty feet from the track, he could not have avoided being injured, is nothing but presumption, and if permissible in this case, is in all cases, and they might as consistently have said the same thing if he could have seen the train when he was 500 feet away from the track.

It must be remembered that the appellee was not struck by the train, but that after he had crossed the railroad track, and was proceeding along the highway, which was almost parallel with the track, the train coming from behind, frightened his horse and it ran away, and appellee, in getting out of the wagon, was injured.

It is clear to the mind of the writer that it was not the failure to give the statutory signals that caused appellee's injury, or that it in any way contributed thereto, because, had the signals been given at the place designated by law, appellee would have been less than ninety feet

from the track, if he approached the track at such a rate of speed as a prudent person should.

The jury found the train was running at the rate of fifty miles per hour. At this rate the train traversed seventy-three feet every second, while a traveler, going at the rate of six miles an hour, would travel about nine feet in each second, hence while the appellee was going from the point where his view was first unobstructed, ninety feet from the track, the train would have gone only 730 feet. But he crossed the track and was going along the highway when the train came up, so he must have gone at least twenty or thirty feet further before the train reached the crossing. While he was going this twenty or thirty feet, the train run 200 or 300 feet. During all this time the train was in plain view, according to the findings of the jury. If, as the jury find, the appellee could have seen a train approaching 1,760 feet, the question arises: Why did he not see it when only 900 or 1,000 feet away? To this there can be but one answer: Because he did not look.

Counsel for appellant also insist that the court erred in giving to the jury certain instructions, the insistence being that they are not applicable to the case as alleged in the complaint.

By instruction number two, of the instructions given at the request of the appellee, the jury were told that if the appellant's servants in charge of the train failed to give the proper signals as required by the statute, the appellant would be guilty of negligence, and if the appellee was injured by reason of such failure, and without any negligence on his part contributing thereto, he was entitled to recover. But, by the third instruction, the court told the jury that if the appellant's servants negligently opened the side valves and permitted the steam to escape,

The Chicago, St. Louis and Pittsburgh Railroad Co. *v.* Butler.

frightening appellee's horse and causing it to run away, he was entitled to recover.

The majority do not pretend to hold that both these instructions were good, but avoid the error of the court in giving the third instruction by saying it did no harm.

The entire court seems to be of the opinion that if the second instruction is good, the third is bad, and *vice versa.*

I think the second instruction is bad because the gist of the action, as alleged in the complaint, is not that appellant's servants failed to give the statutory signals, but for negligently opening the side valves, permitting the steam to escape. Again, the majority hold that the complaint states a cause of action when all the negligent acts charged and duties omitted are considered together, namely: the failure to give the statutory signals, and that appellant's servants "negligently, carelessly and maliciously opened the side valves of the engine, thereby causing a great vapor of steam and smoke to escape," etc. If it were necessary to make these latter allegations in order to state a cause of action, it was necessary to prove them. The second instruction wholly ignores the necessity for making proof of such facts, but simply tells the jury that if appellant failed to give the statutory signals, and appellee was injured thereby, without any fault on his part, he was entitled to recover.

If the majority's view is correct as to the theory of the complaint, this instruction is clearly bad.

If I gather correctly the opinion of the majority, as heard read, the second instruction is held applicable under the issues, and that the third was not applicable but the error in giving it was harmless, because the jury, in answer to interrogatory number one, say the appellee was injured on account of appellant's neglect to give the statutory signals.

It is error to give an instruction wholly without the issues, and it will be presumed to have been harmful unless it affirmatively appears from the verdict of the jury that it did not influence them in arriving at a verdict.

The jury, in answer to the first interrogatory, do not find that the appellee was injured by reason of the neglect of appellant's servants to give the statutory signals, but "by neglecting to sound proper signals."

What the jury may have considered "proper signals" is not stated. What they considered "proper signals," and the signals required by the statute, may be, and in this instance probably were, entirely different. The jury may have thought it was the duty of appellant's servants to have blown the whistle for the entire eighty rods before reaching the crossing, and that when they failed to do so they "neglected to sound proper signals." I can not concur in saying that a finding that they did not give "proper signals" is equivalent to a finding that they did not give the statutory signals.

I think there is error in the record, and the judgment should be reversed.

