The Cincinnati, Hamilton and Indianapolis Railroad Company *v.* Butler.

Filed Sept. 15, 1885.

---

No. 11,991.

## The Cincinnati, Hamilton and Indianapolis Railroad Company *v.* Butler.

Negligence.—*Railroad Crossing.*—*Degree of Care.*—One who attempts to cross a railroad track must exercise care proportioned to the probable danger. ,

Same.—*Personal Injury.*—*Contributory Negligence.*—*Statutory Signals.*—*Excessive Speed.*—*City Ordinance.*—One who is injured by a train while crossing the track of a railroad company will not be exonerated from the presumption of contributory negligence, because of the failure of those in charge of the train to give the statutory signals, or because the train was run at a rate of speed prohibited by a city ordinance, if it appears that by the exercise of proper diligence he might have avoided the injury.

Same.—*Negligence per se.*—The failure to give signals at a public crossing of the approach of a train is negligence *per se*, and fixes the liability of

The Cincinnati, Hamilton and Indianapolis Railroad Company v. Butler.

the railroad company to one who, without concurring negligence, is injured thereby.

SAME.—*Plaintiff Must Affirmatively Show Injury not to be Result of Contributory Negligence.*—Contributory negligence is not a matter of defence in this State, and the plaintiff must show affirmatively, by pleading and proof, that his fault or negligence did not contribute to his injury, before he is entitled to recover therefor.

INSTRUCTIONS.—*Bill of Exceptions.*—The clerk is authorized to copy into the transcript instructions which are properly identified by, but are not copied into, the bill of exceptions, and the place for the insertion of which is designated by the words "here insert."

From the Franklin Circuit Court.

*R. D. Marshall, A. C. Harris, W. H. Calkins* and *W. C. Forrey*, for appellant.

*B. F. Claypool, J. H. Claypool, L. W. Florea* and *G. C. Florea*, for appellee.

MITCHELL, C. J.—Daniel W. Butler, a physician, residing in Connersville, Indiana, became involved in a collision which occurred on the afternoon of the 6th day of January, 1883, at the point where Eastern avenue, along which he was driving northward, crosses the Cincinnati, Hamilton and Indianapolis Railroad.

The engine of a regular passenger train going eastward collided with the top buggy in which he was riding. He was thrown violently upon the ground and severely injured. To recover damages for the injuries sustained, this action was brought, resulting in a verdict and judgment for the plaintiff below.

It is insisted that the plaintiff failed entirely to prove that he was free from contributory negligence, and that the appellant's motion for a new trial should have been sustained, on the ground that the verdict was not supported by the evidence.

There was sharp conflict in the testimony, as it appears in the record, at some of the material points. At other points, not seriously disputed, it leaves the plaintiff's right to recover, to say the least, in doubt.

The plaintiff, and others in his behalf, testified that the train was being run at a rate of speed prohibited by a city ordinance, and that it approached the depot and crossing without giving any warning, either by sounding the whistle or ringing the bell. Against this, the engineer and conductor of the train, and several others, some employees of the company and others not, testified positively that signals were given, both by sounding the whistle and ringing the bell. As the evidence stood upon this point, although negative on the part of the plaintiff, the jury could well have found that the railroad company neglected its statutory duty.

Concerning the manner in which the plaintiff approached the track, and how his vehicle came into the collision, he testified that he drove north along the center of Eastern avenue in a slow trot, until he came to the grade; that then his horse fell into a quick walk; that as he passed the corner of the foundry building he looked up and down the tracks, and neither heard nor saw the approaching train; that a box-car was standing on the south switch, some twenty feet west of the line of the street; that "as I passed the box-car, and after I got past the box-car so that I could see up the track, then I looked up the track and saw an engine in close proximity to me. I looked west; the distance it was would be impossible to tell; it was not very far from me; I do not think it was a hundred feet, perhaps not more than that. My horse was just entering on the main track; whether he was on the main track I could not say, but his head was when I saw the engine. It flashed over me for a moment what to do; my horse's head was on the main track; I just got my whip and gave my horse a lick; he was very quick and went over the track. Just as I did that the engine gave three sharp whistles in quick succession; just as the last whistle sounded the engine struck my buggy; that is all I remember."

Mr. Longfellow, an apparently disinterested and credible witness for the defendant, who saw the occurrence, describes

it as follows: " I remember the accident on that day " (January 6th, 1883). " I was along the side-track forty or fifty yards from the crossing at Eastern avenue and the railroad; I was unloading a car of logs. I saw the plaintiff at the time come up Eastern avenue in a buggy. When I first saw him I heard the cars coming and heard them whistle; he drove right onto the crossing, and when his horse came up onto the switch-tracks the locomotive was very close to him. The horse tried to get off the track; Mr. Butler pulled on his left line, and did his best, and whipped the horse. He pulled him right in ahead of the locomotive. The locomotive struck the buggy between the front and hind wheels, as near as I could see, and threw it over on the horse; and that was all I could see, as the cars came between me and the buggy."

It appears from the evidence, that approaching the railroad track going northward a building called the " old foundry " obstructs a view of the track to the westward, until a point from forty to forty-five feet south of the main track is reached. It was claimed, too, that a box-car standing on the switch at the time of the collision presented some further obstruction in that regard.

Assuming that the train was proceeding at a rate of speed prohibited by ordinance, and that contrary to the usual custom it approached the crossing and depot without giving the prescribed signals, and conceding, too, that the situation was such that a view of the approaching train was difficult to be had, it is nevertheless not clear that the plaintiff exercised such care as removes the presumption of contributory negligence.

The degree of caution which the law requires of one about to cross a railroad track, in order to entitle him to recover damages for an injury sustained by coming in collision with a train, has been so often stated by this court that to repeat it would add nothing to its force. That it is difficult, or requires extraordinary effort, at a particular place, to ascertain whether or not it is safe to attempt to cross, does not excuse

one who is familiar with the locality, and the danger surrounding it, from exercising care proportioned to the probable danger. Manifestly, where obstacles interpose which obstruct sight and sound, it is the plain dictate of ordinary prudence that the traveller on the highway should approach the crossing with a degree of caution much above that which would be required at a point where no obstacles intervened.

While it is imperatively required of those in charge of a train that they give the statutory signals when approaching crossings, and while it may be sufficient to establish negligence against a railroad company·to show that a train was run at a rate of speed prohibited by an ordinance, yet, inasmuch as signals given may, under the circumstances supposed, not be heard, or because through neglect or otherwise those in charge of the train may fail to give them, the traveller who sustains an injury by coming in collision with the train will not be exonerated from the presumption of contributory negligence, if it appears that by the exercise of any degree of diligence which was, under the circumstances, reasonably practicable and available, he might have avoided the injury. *Bellefontaine R. W. Co.* v. *Hunter*, 33 Ind. 335 (5 Am. R. 201); *Toledo, etc., R. W. Co.* v. *Shuckman*, 50 Ind. 42; *St. Louis, etc., R. W. Co.* v. *Mathias*, 50 Ind. 65.

The negligence of the railroad company, in failing to observe the obligation imposed on it by statute, will not excuse one who sustains an injury at a crossing, if he neglects the diligent use of all available means of avoiding such injury, nor will its failure in that regard abrogate or modify the rule that no one shall recover damages for an injury not purposely or wantonly inflicted, to which his own negligence contributed.

A traveller should always approach a railway crossing under the apprehension that a train is liable to come at any moment, and while he may presume that those in charge of it will obey the law, by giving the statutory signals, the law will nevertheless require that he obey the instincts of self-preservation,

and not thrust himself into a situation of danger, which, notwithstanding the failure of the railroad, he might have avoided by the careful use of his senses.

The record in this case does not require us to determine whether the evidence shows that the plaintiff came within the rule required, as it is obvious from an examination of the instructions, that the case was given to the jury upon a theory which the law does not justify.

At this point, it is suggested that the instructions given to the jury are not properly in the record. It is contended that the bill of exceptions copied into the transcript, purporting to set out the charge of the court, did not, in the form in which it was signed by the judge, identify the charge given in such manner as authorized the clerk to copy it into the transcript. The bill, as signed, did not embody the instructions, but referred to them in the manner following: "And be it further remembered that after the charge of the court (to) the jury, which charges are in the following words and figures, to wit (here insert), and to which charges proper exceptions were taken at the time and duly signed by the court." Contrary to the rule which prevailed prior to the enactment of the code, it is now competent to incorporate a paper or document into a bill of exceptions without copying it into the bill. This may be done by so describing or designating it as that the clerk may know to a certainty the particular paper or document intended to be inserted, and by designating by the words (here insert) the place where it is to be copied by the clerk in making the transcript. *Kesler* v. *Myers,* 41 Ind. 543; *State, ex rel.,* v. *President, etc., P. & J. R. R. Co.,* 44 Ind. 350; *Irwin* v. *Smith,* 72 Ind. 482.

The paper to be copied into the transcript must be so described or designated as that, when the transcript is read, it can be recognized as the one described. This is to prevent imposition by the clerk, either through mistake or by design. The papers which were to be copied into the bill under consideration were the charges of the court to which exceptions

were taken, "and duly signed by the court." It must be understood from this that all the charges given were excepted to at the time and signed by the court.

For the purpose of indicating to the clerk the charges which were to be inserted at the place designated, the court recited in the bill that they were such as had been excepted to and signed by the court. Under this designation, no charges except such as were so excepted to and signed could be deemed to be part of the charge of the court, and thus the authority of the clerk was limited to the insertion of the papers so described.

As charges answering this description are contained in the record, and as it will be presumed that the clerk was acquainted with the signature of the judge, and that instructions so described could be as readily identified as if they had been designated by letters or figures, it is deemed that this was a sufficient identification so far as relates to those so signed and excepted to.

One of the instructions excepted to told the jury, in substance, that if the railroad company failed to comply with the statute, which requires that upon the approach of a public highway crossing by a train, the whistle shall be sounded and the bell rung in a prescribed manner, "and an accident and injury occurred therefrom, this would be negligence on the part of the railroad company."

The contention of counsel is, that the omission to give the statutory signals was nothing more than evidence of negligence, and not negligence *per se*, and that "proof of the violation of the statute is not sufficient to determine the company's liability."

While it may be conceded that proof of the violation of the statute is not sufficient to determine the liability of the company, it is nevertheless sufficient to determine the company's negligence. The duty to give certain prescribed signals upon approaching a public highway was a duty defined by a positive law of the State, and a failure to observe it was

in and of itself negligence, which involved the company in liability to any one who, without concurring negligence, was injured thereby. *Cincinnati, etc., R. W. Co.* v. *Hiltzhauer*, 99 Ind. 486; *Central R. R., etc., Co.* v. *Letcher*, 69 Ala. 106 (44 Am. R. 505); *Cordell* v. *New York Central, etc., R. R. Co.*, 64 N. Y. 535; *Pittsburgh, etc., R. W. Co.* v. *Martin*, 82 Ind. 476; 2 Thomp. Neg., section 1232.

The third instruction given by the court at the request of the plaintiff is also a subject of discussion.

This instruction sets out at too great length to admit of copying in full the several supposed hypotheses upon which the plaintiff rests his right of recovery, and assuming that the facts' thus stated were found proved by the evidence, it concludes thus: "Then it will be your duty to find for the plaintiff, unless you find from a fair preponderance of the evidence that the plaintiff was heedless or careless, and neglected to avail himself of the usual precaution which a man of ordinary prudence would use under like circumstances before he drove on defendant's track."

The instruction proceeds upon the theory that the presumption of law is that the injury occurred without the fault of the plaintiff, and that the burden was on the railroad company to show by a fair preponderance of the evidence that he was "heedless or careless." The idea conveyed by it is, that certain facts, inculpating the defendant, being proved to the satisfaction of the jury, they should find for the plaintiff, unless it was proved by a fair preponderance of the evidence that the injury resulted from his own carelessness, thus, in effect, directing them to find for the plaintiff in the event they were unable to determine from the evidence whether the plaintiff had, or had not, been guilty of concurring negligence. The rule required that the plaintiff should make it affirmatively appear to the jury, that his injury was the result of the defendant's negligence, and that he was not guilty of any contributory negligence. If the plaintiff's negligence contributed to the accident, then it was not, in contemplation

of law, caused by the defendant's negligence, and for that reason he must, as a condition to his right of recovery, make it appear affirmatively, that he was without fault contributing to the injury.

The jury were authorized to infer from the instruction given, that upon establishing the defendant's negligence, and his injury, the plaintiff had a right to their verdict, and that that right continued until it was shown by a fair preponderance of the evidence that the injury was the result of his own carelessness. This was an exact reversal of the rule. The plaintiff must make it appear that he was free from fault, before the defendant can be called upon to answer the negligence imputed to it. Cooley Torts, 673.

It is true, as counsel contend, that the rule prevails in some of the States that contributory negligence is matter of defence; it is not so in this State. *Cincinnati, etc., R. W. Co.* v. *Hiltzhauer, supra; Toledo, etc., R. W. Co.* v. *Brannagan,* 75 Ind. 490.

In the case of *Hathaway* v. *Toledo, etc., R. W. Co.,* 46 Ind. 25, the following instruction was held to be a correct statement of the law: "When a person crossing a railroad track is injured by collision with a train, the fault is, *prima facie,* his own, and he must show affirmatively, that his fault or negligence did not contribute to the injury, before he is entitled to recover for such injury."

This rule is founded upon the same reason as that which raises a presumption of negligence against a railroad company in favor of a passenger who sustains an injury by reason of a train being thrown from the track. Where a passenger is passively seated in a car, which is thrown from the track, by which he sustains injury, proof of the fact that he was a passenger, that the accident occurred, and that he was injured, is *prima facie,* at least, all that he can say about it. This is not the case with one who is injured at a highway crossing. In such an occurrence, he is one of the independent actors, charged with duties correlative with the duties of the rail-

The Cincinnati, Hamilton and Indianapolis Railroad Company v. Butler.

road company. He is able and he must show whether his duty was performed.

Thousands of persons pass safely over a given crossing over which thousands of trains are run, under every variety of circumstances, before one is injured, and, therefore, it may be said a presumption arises that the crossing may be safely passed by all those who observe such care as prudent persons ordinarily observe. Out of the thousands who crossed, the one who sustained injury is the exception. Because the thousands who crossed in safety are supposed to represent the ordinary course of conduct better than the one, a presumption of fact is indulged that he, too, would have passed in safety had he observed the caution which prudent men ordinarily observe under like circumstances. This presumption is at least sufficient to require from him an explanation of his relation to the occurrence, and an affirmative showing that the circumstances were such, and his conduct such, that he was not in fault, and as his own conduct and his relation to the occurrence are peculiarly known to himself, and may be unknown to the railroad company, the requirement is a reasonable one.

That the relation of the facts of the injury, and the circumstances under which it occurred, may rebut all presumption of negligence, may be conceded, but this does not affect the rule that the plaintiff has the burden of proof, nor impose upon the defendant the necessity of proving by a preponderance of the evidence that the plaintiff was negligent.

In cases where contributory negligence may be claimed, it is settled in this court that the absence of contributory negligence is part of the plaintiff's case, both as to averment and proof.

It is contended by learned counsel for appellee, that even if the foregoing instruction was erroneous, it resulted in no harm, for the reason that other instructions, given at the defendant's request, stated the rule as claimed by the appellant.

Without determining the question thus suggested, it is suf-

ficient to say that none of the instructions requested by the defendant are excepted to and signed by the court, and so within the rule already indicated they are not properly in the record.

This suggestion disposes of the argument of counsel for the appellant on the subject of the refusal of the court to give instructions asked by them; they are not in the record.

This disposes of all the questions discussed which are likely to arise on a second trial, and for the reasons stated the judgment is reversed, with costs.

Filed Sept. 16, 1885.