No. 17,096.

## THE CINCINNATI, HAMILTON AND INDIANAPOLIS RAILWAY CO. *v.* DUNCAN, ADMR.

RAILROAD. — *Contributory Negligence.* — *Highway and Railroad Crossing.*—One who fails to look in both directions before attempting to drive across a railroad track, and to stop and listen, when his view in one direction is obstructed, is guilty of such contributory negligence as will prevent a recovery for his death caused by a collision with a train coming from that direction.

From the Shelby Circuit Court.

*R. D. Marshall, B. L. Smith* and *C Cambern,* for appellant.

*Black & Pugh, Offutt & Black* and *Hord & Adams,* for appellee.

MCCABE, J.—The appellee, as the administrator of the estate of one James M. Jack, deceased, sued the appellant to recover damages alleged to have been sustained by the widow and children of said decedent, resulting to them on account of his death, caused by the alleged negligence of the appellant.

The issues formed were tried by a jury, resulting in a special verdict, upon which the court rendered judgment in favor of the plaintiff for the damages assessed,

$5,000, over appellant's motion for a new trial. Error is assigned here, among other things, upon the action of the court in overruling that motion.

Among the reasons assigned in the motion for a new trial is that the verdict is not sustained by sufficient evidence.

There were two paragraphs in the complaint, one charging a negligent killing and the other a willful killing. The evidence is in the record, and it wholly fails to establish a willful killing. Moreover, the appellee does not contend or claim that it does. The appellant contends that it is equally insufficient to establish a negligent killing. This action is purely statutory, and the statute that authorizes it does so upon the condition that the facts are such that the deceased might have maintained the action had he lived for the injury resulting from the same act or omission. R. S. 1894, section 285 (R. S. 1881, section 284).

The injury and death were caused by a collision of one of the appellant's trains with the appellee's intestate at a highway or street crossing on the appellant's railroad in the town of Fountaintown, in Shelby county. The train was coming from the east.

There was only one living eye-witness as to the care exercised by the decedent, and the testimony of that witness is all there is in the record to prove one of the indispensable elements of the plaintiff's cause of action.

The defendant's negligence, the plaintiff's freedom from negligence, and the proximate injury resulting from the defendant's negligence, are essential elements of the plaintiff's cause of action in cases of the character of the one now before us. *Lake Erie, etc., R. R. Co.* v. *Stick*, 143 Ind. 449.

The plaintiff must allege and prove in such cases his freedom from negligence contributing to his injury as

much as he must allege and prove the defendant's negligence. *Cincinnati, etc., R. R. Co.* v. *Butler*, 103 Ind. 31; *Indiana, etc., R. W Co.* v. *Hammock,* 113 Ind. 1; *Ohio, etc., R. W. Co.* v. *Hill, Admr.*, 117 Ind. 56; *Cincinnati, etc., R. W. Co.* v. *Howard,* 124 Ind. 280 (8 L. R. A. 593); *Louisville, etc., R. W. Co.* v. *Stommel,* 126 Ind. 35; *Mann* v. *Belt R. R., etc., Co.*, 128 Ind. 138; *Pennsylvania Co.* v. *Meyers,* 136 Ind. 242; *Lake Erie, etc., R. R. Co.* v. *Stick, supra.* The appellant's railroad runs through said town east and west, and the street on the railroad crossing on which decedent was injured and killed runs north and south. The decedent was familiar with all the surroundings and the running of the trains. There was a train due there from the west about the time the decedent attempted to cross the railroad, and the train that injured and killed him was due there from the east twenty minutes before it came.

The only eye-witness as to the care exercised by the decedent, as before observed, was one John A. Lamb, who testified on behalf of the plaintiff, the substance of all of whose testimony is as follows: "I work in the grain business for T. L. Smith, and have lived in the town eighteen years; I was standing in my door at my house when I heard the train; I was about seventy steps from where he was killed, east of the crossing; I was standing about thirty feet from the main track, just south of the switch track, which is south of the main track; I saw a man in a top-buggy, and the top was up, driving north; he was on the street farthest west in the town, called the Greenfield road; I first saw him about twenty-seven steps south of the railroad; he was driving in a very slow walk; he was bent over in his buggy looking to the west." Witness was asked: "Now, did you see the train strike the buggy?"

Answer: "I saw the buggy go through the fence; it made a kind of a crash; couldn't see the man at the time he was struck; there was a dust raised." The following question was asked and answered as follows: "Now, could you see, from the place you were, Mr. Jack, or the man in the buggy, all the time from the time you first saw him until he was struck, or was your view cut off by a house there?" Answer: "My view was cut off for a few feet by the scale-house; the train whistled for the station, and I stepped out on the main track to see if my cow was on the track; and I didn't see her, and stepped back and went west a few feet; the train was about a quarter [of a mile] from the town when it whistled; I live in the second house east of the Greenfield road, just across the alley from the first house, and south of the railroad."

On cross-examination he said: "Mr. Jack was about seventy steps south of Cohee's fence, running east and parallel with and south of the railroad; he was twenty-seven steps from the railroad when I first saw him, or somewhere close there; I thinks to myself, 'Old fellow, if you don't stop, you will get into it;' as long as I saw him he was looking to the west; the scale-house obstructed my view until he passed it, and when I saw him again he was still looking to the west; he had lived up north of there a mile for two years; he came to Fountaintown once a week; he had been a farmer; I could see both him and the engine; he was looking to the west all the time I saw him; when I heard the train whistle I saw the steam."

This is all the evidence there was to establish that the decedent exercised ordinary care to avoid the injury. We are able to say, as matter of law, that it is not sufficient.

The rule laid down by this court in *Hathaway* v. *Toledo, etc., R. W. Co.,* 46 Ind. 25, has been reiterated in many subsequent cases as follows: " 'When a person crossing a railroad track is injured by a collision with a train, the fault is, *prima facie*, his own, and he must show affirmatively that his fault or negligence did not contribute to the injury, before he is entitled to recover for such injury." *Cincinnati, etc., R. R. Co.* v. *Butler, supra; Lake Erie, etc., R. R. Co.* v. *Stick, supra; Mann* v. *Belt R. R., etc., Co., supra; Smith* v. *Wabash R. R. Co.,* 141 Ind. 92, and cases there cited.

Another principle laid down by this court in *Mann* v. *Belt R. R., etc., Co., supra,* has been since frequently affirmed by this court as follows: " 'When one approaches a point upon the highway where a railroad track is crossed upon the same level, it is his plain duty to proceed with caution, and if he attempts to cross the track, either on foot or in a vehicle of any description, he must exercise, in so doing, what the law regards as ordinary care under the circumstances. He must assume that there is danger, and act with ordinary prudence * * under the circumstances. The law defines precisely what the term "ordinary care under the circumstances" shall mean in these cases. In the progress of the law in this behalf, the question of care at railway crossings, as affecting the traveler, is no longer, as a rule, a question for the jury. The *quantum* of care is exactly prescribed as matter of law. In attempting to cross, the traveler must listen for signals, notice signs put up as warnings, and look attentively up and down the track. * * If a traveler, by looking, could have seen an approaching train in time to escape, it will be presumed, in case he is injured by a collision, either that he did not look, or, if he did look, that he did not heed what he saw.' " Citing authority: " 'Where a person

thus approaching a railroad crossing could have seen the train by looking before he attempts to cross, and a collision occurs, it will be presumed he did not look, and by the neglect of so plain a duty he is guilty of such negligence as precludes him from recovery.'" Citing authority: "'Mental absorption, or reverie, induced by grief or business, will not excuse the omission of the duty to look and listen.'" See the authorities last cited.

There is no pretense that the decedent either looked to the east, the direction from which the train was approaching, or that he listened attentively. He was in duty bound to look both ways. *Mann* v. *Belt R. R., etc., Co, supra.*

It is contended, however, that the jury had a right to draw the inference that he was free from contributory fault or negligence. An instruction which told a jury that if there was nothing in the evidence tending to show contributory negligence the jury may infer there was none, was condemned in *Cincinnati, etc., R. W. Co.* v. *Howard, supra.*

Some of our cases hold that, where from any cause the crossing is more than ordinarily dangerous, it is the duty of one nearing the same to stop and listen for the sound that ordinarily follows a moving train. *Louisville, etc., R. W. Co.* v. *Stommel, supra.* The discharge of this duty was not proven. But it is contended that obstructions to the view eastward excused this duty. But the evidence does not show that the obstructions were so great as to shut out all sight. And if they had been complete, that fact imposed the duty of increased care in the use of the sense of hearing, and to that end he should have stopped and attentively listened. And had he done so, he must have heard the sound both of the whistle and the noise of the running train. This the law required him to do under the circumstances. *Cin-*

cinnati, etc., *R. R. Co.* v. *Butler, supra; Louisville, etc., R. R. Co.* v. *Stommel, supra; Pennsylvania Co.* v. *Meyers, supra; Lake Shore, etc., R. W. Co.* v. *McIntosh, Admr.*, 140 Ind. 261.

The witness, and the only witness by whom the plaintiff attempts to prove the exercise of due care on the part of the decedent, and who was only seventy steps nearer the approaching train than the intestate, heard the whistle and saw the steam of the approaching train. There is no evidence to show that the decedent's hearing was not good.

The conclusion seems unavoidable that, had the decedent stopped and listened, he would have heard the train in time to avoid the injury. The evidence is, therefore, insufficient to prove that he exercised ordinary care for his own safety.

The circuit court erred in overruling the motion for a new trial.

The judgment is reversed, with instructions to grant the motion for a new trial.

HACKNEY, J., took no part in this case.

Filed November 20, 1895; petition for rehearing overruled January 28, 1896.