The Baltimore and Ohio Railroad Co. *v.* Talmage, Administrator.

Filed May 5, 1896.

---

No. 1,664.

## THE BALTIMORE AND OHIO RAILROAD CO. *v.* TALMAGE, ADMINISTRATOR.

RAILROAD.—*Contributory Negligence.*—*Personal Injury at Highway Crossing.* — One who approaches a highway and railroad crossing, has no right to assume, from the fact that a railroad engine has just crossed the highway, that a train will not follow in the space of one minute; and if, acting on such assumption, she approaches the crossing without looking or listening, and is injured by a following train, when, if she had looked, she could have seen the approaching train at any point within 160 feet of the crossing, she is guilty of contributory negligence.

From the Porter Circuit Court.

*W. H. Dowdell* and *J. H. Collins*, for appellant.

*E. D. Crumpacker* and *G. Crumpacker*, for appellee.

DAVIS, J.—The appellee recovered judgment in the court below for $1,975.00.  Assuming, without deciding, that appellant is shown to have been guilty of actionable negligence in running the passenger train so close upon the engine, at a speed of forty miles per hour, which was the proximate cause of the death of said Yound, the appellant insists that the undisputed evidence clearly shows that negligence on the part of the decedent contributed to her own injury.

The material facts on this question, considered most favorably in behalf of the appellee, are substantially as follows:

At about one-half mile east of a station called Alida, in Porter county, the appellant's railroad crosses a highway.  The railroad runs due east and west, and the highway north and south, and cross each other at right angles.  On the north of the railroad and west of the highway, the view to the west, on the day of the injury, was obstructed by a high hedge fence, a barn and a house, the east side of which stood within sixty feet of the railroad track, and by a train of freight cars which stood upon a side track, which side track came within about seventy-five feet of the crossing.  On the highway, eighty rods north of the railroad and from thence to the crossing, the view to the east from the highway, at all points, was unobstructed, and an approaching train from the east could be seen for a distance of two miles.  On the 25th day of October, 1892, the deceased was traveling on the highway going south.  She was in a top buggy drawn by a single horse.  At about 5 o'clock in the afternoon of said day, she approached the crossing.  The weather was cloudy and misty and considerable wind was blowing from the southwest at the time.  The top of the buggy was raised and the side curtains were drawn to protect her from the rain and wind.  When

she approached within 160 feet of the track, a locomotive, in charge of appellant's servants, passed over the crossing at the rate of about thirty-five miles per hour, running from the east to the west. A passenger train was following the engine, running at about the rate of forty miles per hour and not less than one-half mile behind the engine. After the engine passed over the crossing, and without looking towards the east, the decedent drove along the highway in a walk upon the crossing, where she was struck by the engine drawing the passenger train, and killed. There was an interval of one minute between the engine and the train. It is conceded that said decedent had her faculties of seeing and hearing unimpaired; and she was familiar with said crossing and surroundings; and that had she looked to the east at any time after the first locomotive passed she would have seen the train approaching.

The general rule applicable to crossing cases and the exceptions thereto are fully discussed by Judge Gavin in the *Grand Rapids, etc., R. R. Co.* v. *Cox,* 8 Ind. App. 29.

In that case both the road and the railroad ran through cuts, so that the approaching train could not have been seen by Cox, if he had looked in that direction, until he was within thirty-five feet of the track. When he could have first seen the the train, it was less than 120 feet distant. There was then less than four seconds of time, before the collision, in which he could have seen the approaching train, if he had looked in that direction. In fact, he did look in that direction, when he was within ten feet of the track, and saw the train, then within fifty or sixty feet of the crossing.

In this case the decedent could have seen the train when she was more than one hundred and sixty feet from the track, and could have seen it at any time

thereafter before she reached the crossing, if she had once looked in that direction. The train was not less than one-half mile distant when the engine crossed the highway, and there was fully one minute of time, as found by the jury, after the engine crossed the highway, in which she could certainly have seen the train, if she had at any point looked in that direction. In fact, as we understand the evidence, it clearly appears that a person on the highway, eighty rods north of the crossing, and thence all the way to the crossing, could see the train coming from the east for two miles, so that the decedent, at any time after the train came within two miles of the crossing, could have seen it, if, at any point on the highway, within eighty rods of the crossing, she had looked in the direction of the approaching train. At any time after the engine came within a mile of the crossing she could have seen both the engine and the train if she had looked in that direction. When the first engine whistled for the crossing, the passenger train, which was a half mile behind it, was evidently within the range of her vision if she had looked in that direction.

The exception to the general rule, stated in the Cox case, has been recognized by the Supreme Court in other cases. *Smith* v. *Wabash, etc., R. W. Co.*, 141 Ind. 92; *Olsen* v. *Lake Shore, etc., R. W. Co.*, 143 Ind. 405 (32 L. R. A. 149); *Miller* v. *Terre Haute, etc., R. W. Co.*, 144 Ind. 323.

See concurring opinion of the writer in *Shirk* v. *Wabash R. W. Co.*, and authorities there cited, 14 Ind. App. 126,

In all these cases, however, the rule is recognized that the negligence of the company does not excuse the traveler approaching a railroad crossing, from exercising ordinary care.

The question is, as to what constitutes ordinary

care under the circumstances of each particular case.

It is conceded that if different inferences may reasonably be drawn from the circumstances in a given case, the question of contributory negligence is for the jury.

The sole and only thing done by the company in this case, from which the inference can be drawn that the decedent was misled by the company in her attempt to cross the railroad, at the time she was hurt, is the fact that there was only an interval of one minute after the engine crossed the highway, before the train reached the crossing. It is not claimed that she was in any manner misled or deceived by the rate of speed of the train. All that can be claimed for her on this branch of the case is that she had the right to rely on the presumption that no train would follow the engine within one minute after the engine crossed the highway. The negligence, if any, on the part of the company, consists in running the train so close upon the engine. No statute or ordinance was being violated by the company. All the statutory signals were duly given by both the engine and the passenger train. Others, not more favorably located, heard the signals and saw the train in ample time for Mrs. Yound to have avoided the collision.

Are the circumstances in this case such as to warrant the inference by the jury that she was in the exercise of due care in attempting to cross the railroad without looking toward the east?

It is true, that if the facts and circumstances under which the traveler approaches the crossing are such as are reasonably calculated to mislead him, and such as would naturally create in his mind a sense of security and a belief that there is no danger, to such an extent that a man of prudence would ordinarily act upon such belief, the reason for the rule which re-

quires him to look and listen both ways, fails. He is, under such circumstances, entitled to the application of the exception to the general rule recognized in the Cox case.

This exception cannot be extended beyond reasonable limitations. It cannot relieve the traveler from the exercise of due care. It only lessens the *quantum* of care required by the general rule. The fact that the decedent in this case may have believed that no train would follow within one minute after the engine, did not entirely relieve her from the exercise of care in approaching the crossing. The question remains, what was ordinary care under the surrounding circumstances? Had she the right, simply because the engine crossed the highway, to believe that there was thereafter no danger incident to crossing the railroad track? Did the fact that she may have apprehended that the freight train standing on the switch might at once move east on the main track (although this apprehension was unfounded) across the highway, justify her in giving her constant and exclusive attention to the west? Are the circumstances such as to excuse her entirely from looking east at any time after the passenger train came in sight? If, after the passing of the engine, the time in which she could have seen the approaching train from the east had been briefer, the distance over which she traveled before reaching the crossing shorter, or the view obscured, as in the Cox case, the question would have been for determination by the jury. It should be remembered, however, that the country was level and that there was nothing to obstruct her view of the approaching train at any point, at any time, after the engine crossed the highway, or for sometime before the engine crossed the highway. After the engine crossed the highway, she continued to drive in a walk,

for the space of one minute and for a distance of one hundred and sixty feet, and, therefore, can it be said that she was suddenly put in such peril by the approaching train as caused her, while acting under the impulse of apparently well-grounded fear, to drive upon the track in an effort to escape from danger?  *Pittsburgh, etc., R. W. Co.* v. *Burton, Admr.*, 139 Ind. 357, 370; *Chicago, etc., R. R. Co.* v. *Butler*, 10 Ind. App. 244, 253 ; *Pennsylvania Co.* v. *Stegemeier*, 118 Ind. 305; *Chicago, etc., R. W. Co.* v. *Hedges, Admx.*, 118 Ind. 5.

The whole question resolves itself into this:  Had she the right, under the circumstances, to assume that no train would follow the engine until after the expiration of one minute from the time it crossed the highway, and to act on that belief or assumption without looking toward the east, either before or after the engine crossed the highway?

If the jury had the right, under the circumstances, to draw the inference that, in the exercise of due care, she was not required to look or listen for the approach of a train from the east, the court cannot interfere with their verdict on this question.  If, on the other hand, the only inference that can reasonably be drawn from the undisputed facts is, that she was not in the exercise of due care when she wholly failed, after the engine crossed the highway, or after the train came in sight, to look or listen in that direction, the judgment of the trial court will have to be reversed.

It is conceded that, if she had looked in that direction, she would have seen the approaching train in time to have avoided the injury.  The contention is that she was misled, by the act of the company in running the passenger train so close upon the engine, and

that, by reason of this fact, the jury was warranted in drawing the inference that she was in the exercise of due care, although she did not, at any time, look in that direction.

Assuming that she had the right, within reasonable limits, to act upon the presumption that the company would not run a train so close upon the engine, she had no right, in our opinion, to wholly omit to use her sense of sight, and rely entirely upon such presumption. She should have used such opportunities as the situation afforded, to look as well as to listen, and the question is whether the space over which she traveled, was so short and the time so brief, after the train came within the range of her vision, as to entitle the appellee to submit the question of contributory negligence to the jury, when it is conceded that she did not at any time look to the east.

In the Harrington case, the Supreme Court held that where it appeared that she looked north, when within thirty-seven feet of the track, but saw no approaching train, and then, without again looking in that direction, proceeded to cross the railroad track, and was struck by an engine from the north, the question of contributory negligence was a question for the jury. *Cleveland, etc., R. W. Co.* v. *Harrington*, 131 Ind. 426.

In the Mann case, where it appeared that he looked east, when within 250 feet of the track, but saw no approaching train, and then, without looking in that direction, proceeded to cross the railroad track and was struck by an engine from the east, the Supreme Court held that the court would adjudge, as a matter of law, that he was guilty of contributory negligence. *Mann* v. *Belt R. R., etc., Co.*, 128 Ind. 138. See also *Cincinnati, etc., R. W. Co.* v. *Grames*, 136 Ind. 39;

*Cincinnati, etc., R. W. Co.* v. *Duncan, Admr.*, 143 Ind. 524.

In neither of these cases was the precise question we are here considering involved. They are cited in support of the proposition that in some cases the question of contributory negligence is for the court, and in others for the jury. The Harrington and Mann cases are similar, except as to the time that elapsed and the distance that was traveled after the traveler, in the respective cases, looked in the direction of the approaching train, before the injury. This case and the Cox case are simliar except as to the time, distance and obstructions. In the Cox case, the time was four seconds, during which there was no obstruction, after first train crossed the highway. In this case, the time was one minute after the engine crossed the highway, and there was no obstruction. In the Cox case, the distance was thirty-five feet. In this case, the distance was 160 feet. In the Cox case, the highway and railroad both ran through cuts so that the approaching train could not be seen until plaintiff was within thirty-five feet of the crossing. In this case, there was no obstruction, and the approaching train could be seen all the time after decedent came within eighty rods and the train within two miles of the crossing. In the Cox case, one train followed another train without giving the statutory signals, with an interval of only twelve seconds between them. In this case, a train giving the statutory signals followed an engine entering a station, with an interval of fully one minute between them.

We reaffirm the principle on which the Cox case is decided, and fully approve of that decision, but in our opinion there are material, strong and clear distinctions between that case and this. In this case, the injured party had ample time and opportunity to look

The Baltimore and Ohio Railroad Co. v. Talmage, Administrator.

in both directions, after as well as before the engine crossed the highway, and before she came into dangerous proximity to the railroad. The engine which crossed the highway in front of her was approaching the station, and no train or car was attached thereto. The distance she was from the track; the rate of speed at which she was going; the fact that the engine was alone; her unobstructed view of the railroad to the east, in connection with all the surrounding circumstances, would have suggested to her that, in the exercise of ordinary care, she should have looked, at least once, in the direction from which the engine came, after, if not before it crossed the highway, to see whether it had become detached from or was being followed by a train.

The presence of an engine on a railroad does not ordinarily lead to the inference that there is no train or car to which it belongs, or another train following it in the near vicinity. If a lone engine approaching a station is unusual, the greater reason would exist why the traveler, who knew that it was unusual, should exercise ordinary care in approaching the crossing, on account of such circumstances. The decedent had lived for twenty years within 250 feet of the railroad. She was familiar with the crossing, and passed over it frequently. In any view that may be taken of the clear and undisputed facts and circumstances in this case, it appears to us that the court should have adjudged, as a matter of law, that the decedent was not in the exercise of due care at the time she was injured. On the contrary, it occurs to us that slight care on her part would have enabled her to avoid the collision.

Judgment reversed, with instructions to sustain appellant's motion for a new trial.

Filed March 6, 1896.

The Baltimore and Ohio Railroad Co. *v.* Talmage, Administrator.

## CONCURRING OPINION.

ROSS, J.—In this case it is undisputed that if the decedent had looked toward the east, when she was at any point within one hundred and sixty feet from the track she could have seen the approaching train. Whether she did or did not look can make no difference in determining the question as to whether or not she was guilty of contributory negligence. It is recognized to be so well settled in this State as to admit of no doubt that when a traveler crossing a railroad track is injured by a collision with a passing train, the fault is *prima facie* his own, and the burden rests upon him, when he seeks to recover damages from the railroad company on account of such injuries, to prove affirmatively that his own negligence did not contribute to the bringing about of such injuries. *Shirk* v. *Wabash R. R. Co.*, 14 Ind. App. 126; *Hathaway* v. *Toledo, etc., R. W. Co.*, 46 Ind. 25; *Indianapolis, etc., R. W. Co.* v. *Greene, Admx.*, 106 Ind. 279; *Indiana, etc., R. W. Co.* v. *Hammock*, 113 Ind. 1; *Chicago, etc., R. W. Co.* v. *Hedges, Admx.*, 118 Ind. 5; *Smith* v. *Wabash R. R. Co.*, 141 Ind. 92; *Cincinnati, etc., R. R. Co.* v. *Duncan*, 143 Ind. 524; *Engree* v. *Ohio, etc., R. W. Co.*, 142 Ind. 618; *Oleson* v. *Lake Shore, etc., R. W. Co.*, 143 Ind. 405 (32 L. R. A. 149).

In the case of *Indiana, etc., R. W. Co.* v. *Hammock, supra*, Mitchell, C. J., says: "There is no presumption that a person injured on a highway and railroad crossing, with which he was familiar, was himself free from negligence. *Prima facie*, the fault was his own, and it is, therefore, essential that the proof should show that the plaintiff was himself in the exercise of due care." See also *Cincinnati, etc., R. W. Co.* v. *Butler*, 103 Ind. 31; *Louisville, etc., R. W.*

*Co.* v. *Stommel*, 126 Ind. 35; *Cincinnati, etc., R. W. Co.* v. *Howard*, 124 Ind. 280 (8 L. R. A. 593).

When all the facts and circumstances, attending and surrounding the injury, and the manner in which it occurred are shown, the question arises, whether or not the injured party's own negligence in any manner contributed to his injury.

When, as in many cases, the traveler has an unobstructed view of the railroad, while going toward the crossing, so that he can see a train approaching, it is settled that at such crossings the *quantum* of care which it is his duty to exercise, is not to be left to and determined by a jury, but that it is fixed by law. He must not only look and listen, but he must assure himself that no train is in close proximity, and that he may cross in safety. That is his duty when the view is open and unobstructed.

The following from Beach Cont. Neg., p. 191, section 63, is quoted as a correct enunciation of the law in *Ohio, etc., R. W. Co.* v. *Hill, Admx.*, 117 Ind. 56 (60), viz: " 'When one approaches a point upon the highway, where a railway track is crossed on the same level, it is his plain duty to proceed with caution, and if he attempts to cross the track, either on foot or in a vehicle of any description, he must exercise, in so doing, what the law regards ordinary care under the circumstances. He must assume that there is danger, and act with ordinary prudence and circumspection upon that assumption. The requirements of the law, moreover, proceed beyond the featureless generality that one must do his duty in this respect, or must exercise ordinary care under the circumstances. The law defines precisely what the term 'ordinary care under the circumstances' shall mean in these cases. In the progress of the law in this behalf, the question of care at railway crossings, as affecting the traveler, is no

The Baltimore and Ohio Railroad Co. *v.* Talmage, Administrator.

longer, as a rule, a question for the jury. The *quantum* of care is exactly prescribed as matter of law. In attempting to cross, the traveler must listen for signals, notice signs put up as warnings, and look attentively up and down the track. A multitude of decisions of all the courts enforce this reasonable rule. *  *  * If a traveler, by looking, could have seen an approaching train in time to escape, it will be presumed, in case he is injured by collision, either that he did not look, or, if he did look, that he did not heed what he saw. Such conduct is held negligence *per se*,' " and in the cases of *Cincinnati, etc., R. W. Co.* v. *Grames,* 136 Ind. 39, and *Smith* v. *Wabash R. R. Co.,* 141 Ind. 92, that court again makes the same quotation approvingly.

But what is his duty when the view is more or less obstructed and the opportunity for exercising the senses of sight and hearing to a greater or less degree interfered with? Is the traveler, because of obstructions or other causes which interfere with the free use of his senses, excused from exercising as great care as the law exacts when there are no obstructions or other cause to interfere with the use of such senses? Not at all, but on the contrary, the law requires that the greater the danger, the greater the degree of care to be exercised to avoid being injured. In other words, the care shown to have been exercised, which will relieve him from contributory negligence, must be commensurate with the danger encountered. So when the danger is shown, that establishes the degree of care which the law exacts from the traveler, for care and diligence necessarily vary according to the exigencies which require vigilance and attention, but it must always be equal to the occasion on which it is to be used. But by what power or authority is this duty

imposed, and how is it defined? Does the law impose it, or is it a question to be submitted to a jury, and by it to be defined and applied according to the facts in each particular case? If it is a question for the jury, they then determine not only whether or not the traveler is under any obligation whatever to either look or listen, but also whether his conduct was sufficient to dissolve the obligation. If the view is unobstructed, he must not only look, but he must see that which is within the range of his vision. And if there is nothing to prevent his hearing, he must not only listen, but must hear that which could have been heard by attentive listening. When the law imposes upon the traveler the duty of looking and listening, it assumes that if he looks he will see that which can be seen, and if he listens he will hear that which can be heard by listening attentively. It is for this reason that the courts, in many instances, have been compelled to say, that the injured party either did not look and listen or did not heed what he saw or heard.

In the case of *Chicago, etc., R. W. Co.* v. *Hedges, Admx., supra,* the court says: "The law presumes that one having the ordinary sense of sight must have seen that which was within the range of his vision, if he gave attention and looked, and if he saw the train approaching and pursued his way nowithstanding, he is to be regarded as taking the risk upon himself."

And in *Mann* v. *Belt R. R., etc., Co.,* 128 Ind. 138, Coffey, J., speaking for the court, says: "The courts cannot close their eyes to matters of general notoriety, and to matters of every-day observation.

"We must know that a train of cars passing over iron or steel rails at a speed of thirty miles an hour does not do so without noise. We must know, too, that where a person possessing good eyesight, located within one hundred feet of the track, has an unob-

structed view of such track for a distance of near one-half mile, he cannot fail to see an approaching train before it reaches him, if he looks attentively, and that if he is possessed of ordinary hearing he could not fail to hear it when listening attentively, if running at the speed of thirty miles an hour."

And in the case of *Lake Erie, etc., R. R. Co.* v. *Stick,* 143 Ind. 449, the court, after setting out the facts showing that a train approaching, when several hundred feet away from the crossing, could have been seen and heard by a traveler approaching the track when six or eight feet distant therefrom, and notwithstanding the fact that the appellee testified that he both looked and listened before going upon the track, and neither saw nor heard the approaching train, holds that he was guilty of contributory negligence, saying: "The appellee must have and did hear it, but must have been so absorbed in mental reverie or abstraction that he did not realize that he heard it; and, with an unobstructed view as he had, he must have seen it in time to escape if he looked, as he says he did, but that the same causes prevented him from realizing that he did not see it."

Where the view is unobstructed and nothing intervenes to prevent the free use of the senses of sight and hearing, the danger is comparatively small, but the greater the obstructions, and the more causes there are to prevent one hearing, the greater the danger; hence as the danger increases the duty of the traveler increases, and the observance by him of the precautions which would excuse him when the danger is slight, will not suffice to relieve him of contributory negligence where the danger is great. True, the books abound with cases where the courts say that the traveler must exercise such care as an ordinarily prudent person, having respect for his own safety, would ex-

ercise under similar circumstances; that there is no rule of law defining what care an ordinarily prudent person would exercise under given circumstances, hence the question as to whether or not the injured person exercised such care as an ordinarily prudent person should exercise under the circumstances, must be left to the jury. In effect, that is to say, that the jury determine, first, the degree of care which an ordinarily prudent person should exercise, and then, second, whether the facts proven show that the injured person exercised that degree of care. The court, therefore, does not and cannot know what the standard established by the jury is, whether greater or less than that defined by the law, where the view is open and unobstructed. In fact, if the jury is to settle the care to be exercised, it may determine that because the view is obstructed and the state of the wind or weather prevents the traveler hearing, he is under no obligation to do anything, before going upon the track. Of course, if looking or listening will avail nothing, a jury may conclude that there was nothing else he could do, hence he would not be guilty of contributory negligence, if, proceeding without any precaution whatever, he was injured.

The most prudent men are not always exempt from carelessness, and, when actually negligent, the law attaches the same consequences to their conduct as to similar conduct in those who are habitually careless. *Cincinnati, etc., R. W. Co.* v. *Grames*, 8 Ind. App. 112; *Belfountaine R. W. Co.* v. *Hunter, Admr.*, 33 Ind. 335; *Pennsylvania Co.* v. *Marion*, 104 Ind. 239.

To say to a jury: "You must fix the standard for reasonable, prudent and cautious men, under the circumstances of the case, taking into consideration your knowledge of men and what those who are reasonable, prudent, and cautious, would have done, and

from this standard determine whether the injured party was negligent," without defining the standard adopted by the law, and explaining to them that the standard which they were to fix must be greater than that fixed by the law as applicable in cases where the danger was less, would leave it open to them to fix a standard in one case requiring a very high degree of care and in another, upon identically the same state of facts, to impose no duty at all.   Juries, such as ordinarily, at least, constitute a panel, are very apt to be influenced by what is suggested by the accident, and assume that the injured party would not voluntarily, at least, place himself in the way of danger; but that, on the contrary, it would be natural for him to try to avoid it.   They seldom get beyond this point, either in fixing the standard or in determining whether or not the conduct of the party injured came up to and fulfilled the requirements of such standard. While I am cognizant of the fact that some of the ablest jurists of the age have said that the jury must fix the standard of care, making it such as an ordinarily prudent person would be likely to exercise under similar circumstances, I must differ from them, because I believe that the risk or danger is settled, the duty is fixed by the law and is not to be enlarged or curtailed according to the whims or caprice of a jury.

While the degree of care to be exercised by a traveler approaching a railroad track is defined and fixed, the only exceptions which warrant a recovery when he has failed to exercise the degree of care thus fixed and defined, are in cases where the railroad company has, by some affirmative act, induced him to disregard it, and yet in a number of cases has the rule been ignored and the exception upheld, when, in fact, there was nothing upon which to base the exception, except the negligence of the injured party himself.   If

exceptions are to be allowed, it is only a matter of time until the rule itself will be wiped out and the exceptions will constitute the rule. I think the rule a just and equitable one, and that it imposes upon the traveler no greater or more onerous duties than every man should observe for his own protection. "The rule itself is so valuable, is sustained by such abundant authority, and, moreover, is founded upon such excellent common-sense reasons, that we will neither depart from it, nor allow it to be undermined by exceptions," says the court in *Greenwood* v. *Philadelphia, etc., R. R. Co.*, 124 Pa. St. 572.

The cases of the *Baltimore, etc., R. R. Co.* v. *Walborn, Admr.*, 127 Ind. 142 ; *Terre Haute, etc., R. R. Co.* v. *Brunker*, 128 Ind. 542 ; *Chicago, etc., R. R. Co.* v. *Spilker*, 134 Ind. 380 ; *Pittsburg, etc., R. W. Co.* v. *Burton, Admx.*, 139 Ind. 357; *Grand Rapids, etc., R. R. Co.* v. *Cox*, 8 Ind. App. 29; and *Chicago, etc., R. R. Co.* v. *Butler*, 10 Ind. App. 244, are exceptions, created by the courts, to the general rule, and some of them at least are apparently in conflict with the earlier decisions of the Supreme Court, but are inferentially, if not indirectly, overruled by the later cases of that court. *Smith* v. *Wabash R. R. Co., supra ; Cincinnati, etc., R. R. Co.* v. *Duncan, supra; Engree* v. *Ohio, etc., R. R. Co., supra;* and *Lake Erie, etc., R. R. Co.* v. *Stick, supra.*

It appears, from the facts in the case before us, either that the deceased did not look when she could and should have done so, or else she did not heed what she saw. In my opinion the right of recovery in this case is settled by the decision in the case of *Indianapolis, etc., R. W.* v. *Wilson*, 134 Ind. 95. There the injured party was an infant, and not held to the strict accountability that attaches to an

adult, and yet the court held him guilty of contributory negligence in not seeing and avoiding a train of cars, when it appeared that in approaching the crossing where he was struck, the servants of the railroad company had detached the engine and several cars from the main part of the train and run such engine and cars in advance of the train, allowing the train of cars to follow without being under the charge or control of any person; that he observed the engine and cars cross the highway, and then started to cross without "knowing or observing, and not having time or opportunity to know or observe, that a portion of said train had been" detached and was following.

For these reasons, I concur in the opinion of Davis, J., that the judgment be reversed.

Filed May 6, 1896.

REINHARD, J.—(concurring)—I am of opinion that, under the facts proved, it must be held as a legal conclusion that the deceased was guilty of contributory negligence in failing to look to the east when she might have done so, and seen the approaching train in ample time to save herself from collision therewith. I, therefore, concur in the reversal on account of a failure of proof.

Filed May 6, 1896.

## DISSENTING OPINION.

LOTZ, J.—The appellee's decedent, Harriett E. Yound, was killed by appellant's train of cars on a highway crossing. There was a trial by jury and a special verdict returned, upon which the court, after overruling appellant's motion for judgment and motion for a new trial, rendered judgment for the appellee in the sum of $1,975.00.

Only two assignments of error are discussed by appellant: (1) The overruling of its motion for judgment on the verdict, and (2) overruling its motion for a new trial.

It is insisted that there is a fatal variance between the facts found and the averments of the complaint.

There are two acts of negligence charged in the complaint. The first is that the railroad company ran a locomotive westward across the highway, and also carelessly and negligently ran and operated a certain other locomotive and train of cars following close behind, to-wit: within fifty rods of the first, and running the same at a high and dangerous rate of speed, at the rate of sixty miles per hour. The second act of negligence charged is the failure to give the statutory signals. The last charge, in so far as it is made a basis of recovery, goes out of the case, as the special verdict finds that the signals were given.

The facts, as found by the special verdict, are substantially as follows:

At about one-half mile east of a station called Alida, in Porter county, the appellant's railroad crosses a highway. The railroad runs nearly due east and west and the highway north and south, and cross each other at about right angles. On the north of the railroad and west of the highway, the view to the west, on the day of the injury, was obstructed by a high hedge fence, a barn and a house, the last of which stood within sixty feet of the railroad track; and by a train of freight cars which stood upon a side track, which side track came within about seventy-five feet of the crossing. Commencing at a point on the highway one hundred and sixty feet north of the track, and from thence to the track, the view to the east was unobstructed, and an approaching train could be seen for the distance of one-half a mile. On the 25th day of

October, 1892, the deceased was traveling on the highway, going south. She was in a top buggy drawn by a single horse. At about 5 o'clock on the afternoon of said day, she approached the crossing. The weather was cloudy and misty, and considerable wind was blowing from the southwest at the time. The top of the buggy was raised, and the side curtains were drawn, to protect her from the rain and wind. When she approached within 160 feet of the track, a locomotive, in charge of defendant's servants, passed over the crossing, at the rate of about thirty-five miles per hour, running from the east to the west, and immediately after the locomotive had passed over the crossing the deceased proceeded on the highway toward the crossing, in a reasonably careful and cautious manner, and attempted to cross; that while so attempting, and when she was upon the crossing, a second locomotive, drawing a train of cars, running from the east to the west, operated by the defendant's servants, ran upon and collided with the buggy and so injured Mrs. Yound that she shortly thereafter died as a result of the collision. The train of cars which collided with the decedent was running at about the rate of forty miles per hour, and was about one-half mile behind the locomotive that first passed over the crossing, and reached the crossing not more than one minute after the locomotive had passed. It is also found that the deceased had her faculties of seeing and hearing unimpaired, and that had she looked to the east, at any time after the first locomotive passed, she could have seen the second train approaching. It is found that the second train sounded the whistle when within eighty rods of the crossing, but that on account of the fact that the top and side curtains were up on the buggy, and the direction and force of the wind, and the peculiar condition of the atmosphere, and the

noise made by the first locomotive, she was unable to hear the whistle. The locomotive of the second train also whistled, when within about ten rods of the crossing, but it was then too late to avoid the collision; nor did she hear the noise made by the train in time to avoid the collision.

The fifth and sixth findings are as follows:

"The train which collided with the decedent, as aforesaid, was run so close to the locomotive, at said highway crossing, as to render the sound of the whistle unavailing to one approaching said railroad from the north, at a point where the decedent was at the time, and it was impossible for one approaching said railroad to hear the sound of said whistle on account of the wind, the condition of the atmosphere and the noise made by the said first engine; that said first engine made considerable noise and clatter, in running west, until it reached Alida, which was heard by the decedent on account of the wind, and such noise and clatter overcame and confused the noise of the train, which occasioned the injury. It was unusual to run trains, one so close to the other, and it was highly dangerous to travelers upon said highway, going southward, to so run them. We find that the defendant did not exercise ordinary care in so running said trains, and that the defendant did not exercise that degree of care, for the protection of travelers upon said highway, that a person of ordinary prudence would have exercised under similar conditions and circumstances.

"We find that the defendant was guilty of negligence in running the train of cars that collided with the decedent so close after the locomotive, as aforesaid. We further find that decedent's death was caused solely by the defendant's want of ordinary care in running its trains, one so close after the other,

as aforesaid, and in running them so that the sound of the whistle of said train for the highway crossing could not be heard by one approaching said crossing, from the point the decedent was when the first engine crossed the highway, as aforesaid; that if said locomotive had been the usual and proper distance ahead of said train which collided with decedent, she would have heard the crossing whistle and approach of said latter train, and could and would have avoided the collision.

"6th.   We further find that the decedent, at the time, and before said collision, was familiar with said highway crossing and surroundings, and she was familiar with the manner in which trains were usually run on said railroad, and on other railroads; and after said first locomotive had passed over said crossing, she supposed, and believed, and had good reason to suppose and believe, that she could cross said railroad before any other train or locomotive would come from the east.

"We further find that the decedent was deceived, misled and thrown off her guard by said locomotive-engine, running so short a distance ahead of said train, which caused the injury, as aforesaid, and was thereby caused to omit the precautions she would have otherwise taken to ascertain the approach of said latter train, and the noise of the said locomotive-engine, as it proceeded west of the crossing, made it impossible for her to hear the approach of said train which caused the injury, as aforesaid.   The railroad, to the west, was obstructed from the view, as aforesaid, and there was a liability of a train coming from the side track west of said crossing, after said first locomotive had passed said crossing, and the decedent's attention was attracted to the westward, and reason-

able prudence, under the circumstances, required her to keep close lookout to the west to avoid a possible collision with a train that might come from that direction; that she maintained such constant lookout and attempted to cross said railroad without looking to the east. We find that in approaching and attempting to cross said railroad the decedent exercised ordinary care, and that in so approaching and attempting to cross she exercised that degree of care that a person of ordinary prudence would have exercised under the same circumstances. We find that the decedent was entirely without fault or negligence, in approaching and attempting to cross said railroad, at the time she was injured."

Disregarding the evidentiary matters and conclusions found in the verdict, we still have these facts remaining, that the appellant was running a locomotive at the rate of thirty-five miles per hour, and that, following behind the locomotive, the appellant was running a passenger train at the rate of forty miles per hour, the two trains being only one-half a mile apart in distance, and not more than one minute apart as to time.

Do these facts constitute negligence? And is the question of negligence one for the court or one for the jury?

Negligence is the absence of that degree of care which an ordinarily prudent person would exercise, under given conditions. The law has no fixed rule or standard by which negligence or the absence of negligence can be determined, as applied to all cases. When the adjudications have evolved a rule, or the precedents established a standard, that rule or standard may be applied in all similar conditions. And there are other cases in which negligence or no negligence may be determined, by the application of com-

mon sense and the plainest principles of justice. But there are many cases which do not fall within any of these rules. The question of negligence then becomes one for the jury. *Louisville, etc., R. R. Co.* v. *Berry,* 9 Ind. App. 63.

The rights of a railroad company at a highway crossing are superior to those of the traveler on the highway. Its trains have precedence over the traveler. But the company owes a duty to the traveler. It is required to give warning signals of the approach of its trains, and to run the train in such a manner that the warning signals will not be unavailing to the traveler. It is also required to operate its trains in such a manner as not to mislead the traveler or lull him into a sense of security, when danger actually exists. If it violates these duties, it is guilty of negligence. If, under the facts found, only one inference can be drawn, then the question of negligence or no negligence is one for the court, but if two inferences can be drawn by a reasonable person, one of negligence and one of no negligence, then it is a question for the jury. I am of the opinion that the question of whether the appellant exercised due care, in the operation of its trains, on this occasion, is one for the jury, and that the negligence charged in the complaint is found in the verdict.

The appellant also insists that the findings show that the decedent contributed to her injury.

A traveler upon a highway must approach a railroad crossing, under the apprehension that it is a place of danger; and, ordinarily, he is required to stop and look and listen for approaching trains; but this is not an inflexible rule. There may be circumstances which will excuse the traveler from using these precautions. If one train has passed, and the traveler has no reason to apprehend that another will fol-

low closely behind it, he may be excused from exercising that high degree of care that the law usually enjoins upon him. The question of whether or not the decedent exercised that degree of care that a person of ordinary prudence would have exercised, under the facts and circumstances found, was also one for the jury. In determining this question, the jury had the right to take into consideration the condition of the atmosphere; the direction and force of the wind; the noise and confusion made by the first engine; the obstructions to the view on the west of the highway; the freight train standing upon the side track; the fact that the decedent's attention was diverted so that she failed to look to the east; and the fact that she was misled, or caused to believe that another train was not then approaching, because one had just passed.

This case cannot be distinguished, in principle, from that of *Grand Rapids, etc., R. R. Co.* v. *Cox*, 8 Ind. App. 29, on this point. If that case was correctly decided, then this judgment should be affirmed. If it was not correctly decided, then it should be overruled.

In that case the traveler upon the highway, about 9 o'clock at night, drove toward the crossing, riding in a buggy with the top down. Knowing that a train was about due, he listened and heard it, checked his horse to a slow walk, and when he was one hundred feet from the crossing the train passed. His horse then started up in a trot. The traveler drove on without looking further until his horse's feet were almost on the track, and his body perhaps ten feet from it, when he saw another train, apparently within about fifty or sixty feet, coming at the rate of fifteen or twenty miles per hour. Believing this to be his only chance of escape, he struck his horse with the lines and was caught by the train as he crossed the track. By looking, he could have seen the approaching train

when he was thirty-five feet away. This he could have done in an instant of time. A glance would have advised him of his danger. This he could have done several times before he reached the danger point. Had he done so, he could have avoided the collision. But he did not do so, and this court held that it could not rule that he was guilty of contributory negligence *per se,* but that it was a question for the jury. When it is considered that the traveler in that case, as well as in this, had the opportunity to see the approaching train, in time to avoid it before the danger point was reached, there is no difference in principle. In fact, there are elements in this case that tended to excuse the traveler from looking, that did not exist in that. Here the noise and clatter of the departing train, the condition of the atmosphere, the direction and force of the wind, the hedge upon the west side of the road, and the freight train upon the side track,—are so many additional facts proper to be considered by the jury in determining whether or not the traveler was guilty of contributory negligence. The freight train upon the side track was of itself a constant menace of danger, from the time she came in sight of the crossing. The decedent, no doubt, as the jury found, was laboring under the apprehension that she was in danger from the freight train. It was liable to cross the highway from the west, and the deceased's attention was diverted from the danger to the east. In this respect, this case is a much stronger one to be left to the jury than the Cox case, *supra.* That two or more reasonable inferences can be drawn from the evidence, is demonstrated from the fact that a jury of twelve men, and the learned judge who presided at the trial, were of the opinion that the deceased did not contribute to her death.

The appellant also insists that it was not respon-

sible for the conditions of the weather and atmosphere, and the direction and force of the wind; that these conditions only enjoined a higher degree of care upon the decedent, and that she contributed to her death by having the top of the buggy up and the side curtains drawn, these being conditions of her own creation, and which obstructed her sight and hearing. The decedent had the right to protect herself from the inclemency of the weather, by the top and side curtains. The fact that she did so only goes to the *quantum* of care which she was bound to exercise under all the other circumstances. The court cannot say, as a matter of law, that she thereby contributed to her death. This was also a question for the jury, and, in determining it, the jury might take into consideration the fact that her attention was diverted to the dangers which she apprehended from the west, and to the fact that she was induced to believe that no train was approaching from the east.

I am of the opinion that there was no error in overruling the motion for judgment on the verdict.

Under the assignment of error, predicated upon overruling the motion for a new trial, the appellant insists that there was no evidence whatever to support some of the facts found by the verdict.

No witness testified to the usual or customary manner of operating trains upon a railroad, nor as to the difference in distance and time which should be observed between trains to prevent collisions. The appellant asserts that neither the court nor the jury has any right to assume a fact in the absence of any evidence.

There are many facts which a court or jury, in trying a case, may assume and find without evidence. A person acting in a judicial capacity must not only exercise his own logical faculties, in construing and ap-

plying evidence, but must draw upon his own sources of knowledge for such information as is common to all intelligent persons of the same community. Reason and evidence are the co-ordinate factors which go to make up proof. Juries, like courts, may exercise judicial knowledge, and judicial knowledge extends to such matters of every-day knowledge of which there is no possibility of dispute. Evidence is not required to establish that which is so notorious to persons of ordinary intelligence, that it either admits of no doubt, or could, at the moment, be established by a profusion of evidence. Wharton Ev., sections 329, 330; Greenleaf Ev. 11; Taylor Ev., section 4, note 2; *Brown v. Piper*, 91 U. S. 37.

Courts and juries may also take judicial knowledge of the custom and manner of operating railroads. *Downey* v. *Hendrie*, 8 Am. and Eng. R. R. Cas. 386; *Slater* v. *Jewett*, 5 Am. and Eng. R. R. Cas. 515.

The appellant also insists that there was no evidence whatever as to the condition of mind of the decedent, at and immediately preceding the injury, and that the jury had no right to conclude that her attention was diverted, and that she was misled.

The instincts of self-preservation frequently stand in the place of evidence. It is not to be assumed, in the absence of evidence, that the deceased rushed heedlessly and recklessly to her own destruction.

"The love of life and the instincts of preservation are the highest motives for care in any reasoning being; they will stand for the proof of care until the contrary appears." *Cleveland, etc., R. R. Co.* v. *Rowan*, 66 Pa. St. 393; *Allen* v. *Willard*, 57 Pa. St. 374; *Gay* v. *Winter*, 34 Cal. 153.

The jury had the right to conclude that the deceased did those things, and was in the same mental

condition that a reasonable being would naturally be in, growing out of the surroundings.

It is lastly insisted that the undisputed evidence shows that the decedent was guilty of contributory negligence in attempting to drive across the track after she saw the approaching train. The evidence shows that she was very close to the track when she discovered the approaching train; that she seemed to become excited and confused, and then made the attempt to cross. That she was not guilty of contributory negligence, under such circumstances, was expressly so held in *Grand Rapids, etc., R. R. Co.* v. *Cox, supra.* The authorities abundantly establish the proposition that when a person is suddenly confronted with an unexpected danger, not of his own making, he is not expected or required to act with that degree of circumspection and caution of a person in a calm condition of mind. The law makes due allowance for the infirmities of humanity.

I am of the opinion that the judgment should be in all things affirmed.

Filed May 6, 1896.